LENORE DER WEER as Personal Representative of the ESTATE OF JOHN DER WEER, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION; AMERADA HESS CORPORATION; LITWIN CORPORATION; RARITAN SUPPLY COMPANY, Individually and as Successor-in-interest to BRIDGE SUPPLY COMPANY; MADSEN & HOWELL, INC.; UNION PUMP COMPANY; GARLOCK, INC.; FOSTER WHEELER CORPORATION, Individually and as Successor-in-interest to FORTY-EIGHT INSULATIONS, INC.; 3M a/k/a MINNESOTA MINING & MANUFACTURING COMPANY; WESTINGHOUSE ELECTRIC CORPORATION; INGERSOLL RAND CORPORATION; ALLTITE GASKET COMPANY; UNIVERSAL OIL PRODUCTS also known as U.O.P.; CBI COMPANY, LTD.; HARBISON-WALKER REFRACTORIES; FLUOR DANIEL, Individually and as Successor-in-interest to FLUOR ENGINEERS & CONSTRUCTORS, INC.; FLUOR ENGINEERS & CONSTRUCTORS, INC.; FLUOR CORPORATION; A.P. GREEN INDUSTRIES, INC., Individually and as Successor-in-interest to A.P. GREEN REFRACTORIES COMPANY; TUTHILL CORPORATION, Individually and as Successor-in-interest to COPPUS MURRAY GROUP and/or COPPUS TURBINES; MOBIL OIL COMPANY; JOHN CRANE PACKING COMPANY also known as CRANE PACKING COMPANY; RUBBER & GASKET COMPANY OF PUERTO RICO, and SHELL OIL COMPANY, Defendants

LITWIN CORPORATION, Third-Party Plaintiff

v.

VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORPORATION; BIGELOW-LIPTAK; RESAL, INC.; PORTILLA CORPORATION; PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP, INC.; STUBBS-OVERBECK, INC.; RIGGERS & ERECTORS INTERNATIONAL, INC.; KELLOGG BROWN & ROOT, Individually and as Successor-in-interest to BROWN & ROOT OVERSEAS, INC.; THE LUMMUS COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4, Third-Party Defendants

SX-2005-CV-274

Superior Court of the Virgin Islands

Division of St. Croix

December 22, 2014

THOMAS ALKON, ESQ., Thomas Alkon, P.C., Christiansted, USVI; JERRY HUDSON EVANS, ESQ., GORDON RHEA, ESQ., Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, S.C., *Attorneys for Plaintiff Lenore Der Weer, as Personal Representative of the Estate of John Der Weer*.

BRITAIN H. BRYANT, ESQ., SUNSHINE S. BENOIT, ESQ., Bryant Barnes Blair & Benoit, LLP, Christiansted, USVI; WALTER G. LATIMER, ESQ., Wilson,

Elser, Moskowitz, Edelman & Dicker, LLP, Miami, FL, *Attorneys for Hess Oil Virgin Islands Corporation and Amerada Hess Corporation.*

MOLLOY, *Judge*

## MEMORANDUM OPINION

(December 22, 2014)

**BEFORE THE COURT** is a motion filed by Plaintiff Lenore Der Weer, personal representative for the survivors and the estate of John Der Weer, requesting leave to amend the complaint to correct an inadequately pled survival claim. Defendants Hess Oil Virgin Islands Corporation and Amerada Hess Corporation — the only parties against whom Mrs. Der Weer's claims remain in this multi-party litigation — argue that Mrs. Der Weer waited too long to move to amend, that the proposed amendments are futile because she cannot pursue both a survival claim and a wrongful death claim, and lastly, that the statute of limitations has run on the survival claim. For the reasons stated below, the Court finds that the complaint did not plead a survival claim and therefore there is nothing to amend. Additionally, assuming that Mrs. Der Weer requests leave to amend to add a survival claim, leave must be denied because the statute of limitations for a survival claim had run before she commenced this action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John Der Weer worked at the oil refinery on St. Croix from 1966 to 2002. On September 12, 2003, he passed away from lung cancer. On August 16, 2004, his wife, Lenore Der Weer, filed a petition in the Family Division of the Superior Court, which was captioned *In re Petition for Appointment of Lenore Der Weer as Personal Representative of the Estate of John Der Weer, Deceased* and docketed as case number SX-2004-FM-020. In her petition, Mrs. Der Weer requested that the court appoint her as the personal representative of her husband's estate so that she could pursue a wrongful death action and a survival action. The Family Court granted the petition and, in an order entered on September 7, 2004, appointed Lenore Der Weer personal representative "for the purposes of initiating a wrongful death action on behalf of the Estate, heirs and survivors of John Der Weer, and prosecuting a survival action."

Eight months after being appointed, Mrs. Der Weer filed a complaint in the Civil Division of the Superior Court. The complaint, filed May 7, 2005, and amended on November 7, 2005,[1] named approximately thirty businesses and other corporate entities as defendants, including Hess Oil Virgin Islands Corporation and Amerada Hess Corporation ("Hess Defendants"), and alleged that all of the defendants were responsible, either directly or indirectly, for exposing John Der Weer to asbestos and other toxic substances during his employment at the refinery, which caused him to die from lung cancer. In her capacity as personal representative, Mrs. Der Weer seeks damages, including punitive damages, for the Estate of John Der Weer as well as for herself and Mr. Der Weer's adult children, his survivors as defined by the wrongful death statute.

The parties commenced discovery and motion practice and by February 2014 Mrs. Der Weer had settled with many of the defendants, who were later dismissed by court order. In anticipation of a status conference scheduled for March 6, 2014, the Court issued an order on February 20, 2014, identifying what parties remained and which motions were pending, and then directed the parties to respond if any of the motions had become moot. Among those identified was a motion filed by Defendant / Third-Party Plaintiff Litwin Corporation to strike the demand for punitive damages from the complaint.[2]

In response to the February 20, 2014 Order, Mrs. Der Weer and Litwin each informed the Court that Litwin's motion to strike was moot because the Superior Court Judge to whom this case was assigned at the time had denied the same motion Litwin filed in another case, *Estate of Ettienne v. Hess Oil Virgin Islands Corporation*, SX-2005-CV-583. They further explained that the motion would also be moot because Mrs. Der Weer expected to settle with Litwin before trial. In ruling on the motion to strike, the Court first concluded, in a Memorandum Opinion and Order entered on March 24, 2014, that Litwin's motion to strike was not moot

---

[1] In an order entered February 18, 2014, *nunc pro tunc* to November 7, 2005, the Court granted a motion to amend the complaint to substitute CBI Company, Ltd. in place of Chicago Bridge & Iron, N.V. as the real party in interest This was the only change to the complaint initially filed on May 7, 2005.

[2] Although the complaint refers to punitive damages as a claim, the Court will refer throughout this opinion to the "claim" for punitive damages as a demand for reason previously explained. (*See* Mem. Op. at 4 n.1, entered Mar. 24, 2014.)

— even though the parties believed that it was and even though they may have resolved their claims — because the Hess Defendants had joined the motion. Since the demand for punitive damages remained against the Hess Defendants, Litwin's motion was not moot as to them. The Court then concluded that the motion to strike had to be granted because punitive damages are not allowed in wrongful death actions. This matter was distinguishable from *Ettienne*, the Court explained, because in that case the personal representative brought claims under both the survival statute and the wrongful death statute whereas in this case Mrs. Der Weer only filed a wrongful death action, not a survival action.

In response to the March 24, 2014 Memorandum Opinion, Mrs. Der Weer, on April 1, 2014, moved to amend the complaint. The Hess Defendants filed an opposition to her motion on April 14, 2014, to which Mrs. Der Weer filed a reply on April 22, 2014. At a status conference held on September 15, 2014, counsel for Mrs. Der Weer and counsel for the Hess Defendants argued the motion to amend. None of the other parties responded to her motion or joined the Hess Defendants' opposition.

## II. DISCUSSION

In her Motion, Mrs. Der Weer requests leave to amend the complaint "in two aspects," first "to add 'Survival Action' to the caption" and then "to add . . . a request for 'damages for pain and suffering of John DerWeer [sic] and punitive damages under 5 V.I.C. § 77.' " (Pl.'s Mot. to Am. Compl. ¶ 2, filed Apr. 1, 2014 ("Pl.'s Mot.")). Neither change will add a new cause of action or a new party, she claims. Instead, because Superior Court Rule 8 allows defects or omissions in pleadings to be corrected by amendment, allowing both changes will correct what the Court concluded in its March 24, 2014 Memorandum Opinion, that the complaint "*inadequately pleaded* a survival action." *Id.* at 5. Citing *Santiago v. Virgin Islands Housing Authority*, 57 V.I. 256 (V.I. 2012), Mrs. Der Weer further argues that Virgin Islands courts should look to Federal Rule of Civil Procedure 15 to determine whether allowing an amendment under Superior Court Rule 8 will be prejudicial to the defendants. Since the May 7, 2005 Complaint included a demand for punitive damages, all of the defendants had notice from the beginning of the case that she intended to pursue a survival action. Consequently, none of the defendants will be prejudiced if the Court allowed her to amend the complaint "to invoke the proper statutory authority under which she may bring suit," particularly

given the "liberal allowance of amendments" under Rule 15. (Pl.'s Mot. 4, 3.)

In opposition, the Hess Defendants argue that Mrs. Der Weer has waited too long, more than nine years, to add a survival claim and, additionally, that adding a survival claim, which allows for punitive damages, "on the eve of trial" would be prejudicial, change completely "the tenor of this lawsuit," and require "new strategies." (Hess Defs.' Opp'n to Pl.'s Mot. to Am. Compl. 2-42, filed Apr. 14, 2014 ("Hess Defs.' Opp'n")). The Hess Defendants then argue, in the alternative, that the amendments Mrs. Der Weer proposes are futile because "[s]urvival claims and wrongful death claims are incompatible" and therefore she "should not be allowed to recover under both." *Id.* at 5-7. Further, even if Mrs. Der Weer can pursue both claims, the Court should still deny the motion to amend because the statute of limitations on John Der Weer's tort claims expired a year after his death. Anticipating that Mrs. Der Weer "will argue that the proposed survival claim relates back to the filing of the wrongful death claim," the Hess Defendants counter that the relation back doctrine does not apply if the statute of limitation expired before the original complaint was filed. *Id.* at 12. As a result, the Hess Defendants argue that since the statute of limitation had run on John Der Weer's claims before the complaint was filed, the motion to amend should be denied.

Mrs. Der Weer disputes the Hess Defendants' undue delay and prejudice claims in her reply, reiterating that all defendants, including the Hess Defendants, had notice of the demand for punitive damages from the original complaint. She argues that it was not until the March 24, 2014 Memorandum Opinion "that the parties were aware that the [demand] for punitive damages, which had been pleaded from the very start of the lawsuit, was no longer in the case." (Pl.'s Reply in Support of Mot. to Am. Compl. 2-3, filed Apr. 22, 2014 ("Pl.'s Reply")). She further disagrees with the Hess Defendants' futility argument, arguing that John Der Weer's "clock on the right to sue" for an asbestos-related illness did not start until the illness started to show. *Id.* at 5. Since he did not get sick until June 2003, Mrs. Der Weer argues that she had two years from then to file a personal injury lawsuit and, although he passed away, the complaint filed on May 7, 2005, was filed within that two-year window. Finally, Mrs. Der Weer argues that because the original complaint "was filed within the permissible statute of limitations for either a wrongful

death or survival action," the relation back doctrine is not relevant here. *Id.* at 5.

## A. The Complaint Does Not Plead a Survival Claim

Before turning to the merits, the Court must address a concern with both sides completely misunderstanding the other side's arguments. Mrs. Der Weer is not asking, at least not directly, to add a survival claim. Rather, she argues that she "is *adding no new cause of action* and no new party . . . [b]y her requested amendment" because the complaint already pleads a survival claim, just not adequately. (Pl.'s Mot. 2) (emphasis added). If this is correct, then the Hess Defendants' concern with Mrs. Der Weer "seek[ing] to amend her complaint . . . to *add a claim* for survival . . . [a]fter nine years of litigation" is completely unfounded. (Hess Defs.' Opp'n 1) (emphasis added). More importantly, all of the Hess Defendants' arguments would be misplaced if the complaint does, in fact, plead a survival claim. The Hess Defendants miss this point, arguing instead that adding a survival claim would be prejudicial and futile. By then addressing an argument Mrs. Der Weer did not raise — but one they anticipate her raising — the Hess Defendants further complicate matters.

Raising new arguments for the first time in a reply is concerning. *See, e.g.*, *Dannasch v. Bifulco*, 184 A.D.2d 415, 585 N.Y.S.2d 360, 362 (App. Div. 1992) ("The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion."); *Lawson v. Mahoning Cty. Mental Health Bd.*, 2010-Ohio-6389 (Ohio Ct. App. 2010) ("The problem with allowing a new argument to be asserted in a reply in support of the original motion is that it does not give the party opposing the motion the opportunity to respond."). But the more pressing concern here is that Mrs. Der Weer did not argue in her reply that a survival claim was in the complaint all along and the Hess Defendants have waived any statute of limitations defense by waiting nine years to raise it. *Cf. Ottley v. Estate of Bell*, 61 V.I. 480, 492 (V.I. 2014) ("statute of limitations . . . is an affirmative defense that may be waived if not raised at the first opportunity."). She also did not request leave to add a survival claim. Therefore, before addressing any other argument, the Court must first determine whether Mrs. Der Weer inadequately pleaded a survival claim in the complaint and therefore is not adding a new cause of action or a new party.

96

The complaint begins by defining John Der Weer as "decedent," (First. Am. Compl. ¶ 1, filed Aug. 24, 2005), a term used in the law to refer to "[a] dead person." BLACK'S LAW DICTIONARY 491 (10th ed. 2014). It then identifies Lenore Der Weer as the personal representative, gives the date and cause of John Der Weer's death, and names his survivors. (First Am. Comp. ¶¶ 3-5.) After identifying the defendants, the complaint continues with general background allegations concerning asbestos and the harms associated with asbestos before alleging that Mr. Der Weer developed lung cancer "as a result of his exposure to asbestos and/or asbestos containing products" and that he died "as a result thereof." *Id.* ¶ 36. In what is labeled "First Cause of Action," the complaint groups together four separate theories of liability — negligence, gross negligence, recklessness, and intentionally wrongful acts — and alleges that all of the defendants "are guilty" because they caused John Der Weer "to be exposed to asbestos and asbestos-containing products," which "proximately caused Plaintiff's injuries." *Id.* at ¶ 42. In the second cause of action — which is really another negligence theory, supplying a chattel dangerous for intended use — the complaint alleges that the "Defendants supplied to Decedent Der Weer directly, and through others, asbestos," alleges that they failed to exercise reasonable care in supplying asbestos, that they further failed to discover the dangers of asbestos, and that they failed to inform others about the danger. *Id.* ¶ 46-47. Finally, in what is labeled third cause of action, the complaint claims that the actions of the defendants in "causing Decedent Der Weer to be exposed to asbestos . . . resulting in his death . . . warrant the imposition of punitive damages against them." *Id.* ¶ 50. The personal representative then requests damages "for each of decedent's survivors as delineated in 5 V.I.C. § 76," which under the "Virgin Islands' Wrongful Death Statute" includes "his widow and three children . . . [and] the Estate of John Der Weer." *Id.* ¶¶ 51-52.

Mrs. Der Weer now moves to amend this complaint to add "Survival Action" to the caption and to add "a request for damages for pain and suffering of John Der Weer [sic] and punitive damages under 5 V.I.C. § 77." (Pl.'s Mot. 2.) She argues since Superior Court Rule 8 allows the court to " 'amend any . . . pleading for any omission or defect therein,' " *id.* at 2 (quoting SUPER. CT. R. 8), she should be allowed to correct the inadequately pleaded survival claim by "invok[ing] the proper statutory authority under which she may bring suit." *Id.* at 4.

97

If, as Mrs. Der Weer claims, she is not adding a new cause of action or a new party because she did assert a survival claim, just inadequately, then Superior Court Rule 8 would allow her to correct any inadequacies in stating that claim. Superior Court Rule & provides that "[t]he court may amend any process or pleading for any omission or defect therein." Neglecting to include "Survival Action" in the caption — if this were, in fact, a survival action — is certainly an omission that can be corrected under Rule 8. *See Brooks v. Gov't of the V.I.*, 58 V.I. 417, 427 n.11 (2013) ("Superior Court Rule 8 . . . states the general rule that a court can correct errors or defects in pleadings"). Similarly, if this were a survival action, failing to "invoke" the survival statute, section 77 of title 5 of the Virgin Islands Code, as the proper "authority" for seeking damages, including punitive damages, for John Der Weer's injuries would be a defect that Mrs. Der Weer could correct through Rule 8. *Cf. Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (noting that "[f]ederal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief . . . they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). But here, the May 7, 2005 Complaint did not just fail to invoke the correct authority, it failed to identify any claims personal to John Der Weer that survived his death pursuant to section 77 of title 5. To explain why the complaint did not plead a survival claim, the Court must discuss the differences between wrongful death actions and survival actions.

### i. History of Wrongful Death and Survival Actions

At common law, all personal injury, or tort, claims ended, or abated, when the person who was injured died or when the person who caused the injury, the tortfeasor, died. *See, e.g., Sullivan v. Delta Air Lines, Inc.*, 15 Cal. 4th 288, 63 Cal. Rptr. 2d 74, 935 P.2d 781, 784 (1997) ("At common law, all causes of action for personal torts abated on the death of either the injured party or the tortfeasor The rule was expressed in the maxim, *actio personalis moritur cum persona*, i.e., a personal action dies with the person. Other causes of action, principally property and contract claims, did not abate with the death of a party."); *Stuber v. Louisville & N.R. Co.*, 113 Tenn. 305, 87 S.W. 411, 413 (1905) (" 'At common law all personal actions for wrongs or injuries died with or abated by the death of the party injured, and no right of action survived or arose in favor

of the widow or children or next of kin.' ") (quoting *Whaley v. Catlett*, 103 Tenn. 347, 53 S.W. 131, 133 (1899)). This rule originated in England where:

> recovery for tortious conduct [was not allowed] unless both tortfeasor and victim lived until a judgment was rendered. If either the tortfeasor or his victim died, then recovery was barred. The reason for this aversion to recovery is unclear, but might lie in the fact that these cases were decided before torts became a distinct area of law, and thus courts approached such cases from a criminal law framework. The courts probably required a living tortfeasor because they were reluctant to punish an individual's successors for the individual's quasi-criminal conduct — what we would now label a tort — after that individual died. Since punishment for criminal activity is remedial, whereas tort recovery is compensatory, such reasoning made sense in pre-tort jurisprudence. A judge would not order a money judgment against a tortfeasor's family instead of the tortfeasor, just as a judge would not send a criminal's family to jail instead of the criminal.
>
> Similarly, the death of the tortfeasor's victim precluded recovery. If the victim died, then any claim she might have had against the tortfeasor merged into the greater offense of a crime against the Crown. Common law did not recognize any right of recovery for the decedent's estate, but instead viewed wrongful death as a loss to the Crown, which warranted a deterrent, a fine, payable to the State from the tortfeasor's belongings. Less clear is why the decedent's family would also be barred from recovery, especially since in the Anglo-Saxon tradition all homicide was originally considered a type of civil wrong that required only monetary compensation. Some commentators have noted that since a tortfeasor's belongings were forfeited to the Crown upon the decedent's death, no private action would have been practical. In effect, the tortfeasor would be rendered judgment-proof because the State took first. Whatever the reason, English common law, as it stood in the early nineteenth century, precluded the decedent's family from recovering damages for the wrongful taking of the decedent's life.

*Indalecio v. Yarofalir*, 2006 MP 18, ¶¶ 10-11 (N.M.I. 2006) (internal quotation marks, citations, and footnote omitted).

This common law rule — that damages for the death of a human being are not recoverable in a civil case — was first stated in a brief remark Lord Ellenborough made in the case of *Baker v. Bolton* (1808), 170 Eng. Rep. 1033; 1 Camp. 493. Baker and his wife had been travelling in a stagecoach owned by Bolton when the coach overturned, bruising Baker and severely injuring his wife. The wife died a month after the accident. Baker sued Bolton for negligence and claimed as damages that he "had wholly lost, and been deprived of the comfort, fellowship, and assistance of his said wife, and had from thence hithero suffered and undergone great grief, vexation, and anguish of mind." 170 Eng. Rep. at 1033. Lord Ellenborough instructed the jury to consider only "the bruises which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account, from the time of the accident till the moment of her dissolution" because "in a civil Court, the death of a human being could not be complained of as an injury." *Id.*

Although courts in America "originally permitted recovery for wrongful death," they later followed the rule stated in *Baker v. Bolton*, which then settled the question "in American jurisdictions that there can be no recovery for wrongful death absent a statute." *Indalecio*, 2006 MP 18 at ¶ 12; *see also* STUART M. SPEISER & JAMES E. ROOKS, JR., *Recovery for Wrongful Death* § 1:2 (4th ed. 2005) ("Lord Ellenborough's off-hand remarks became the basis for the so-called American common law 'rule' that there could be no recovery for wrongful death in the absence of statute. . . . [H]is dictum was recited by rote, without any critical examination, by hundreds of decisions in the various courts throughout the United States."). When the British Parliament later "created a cause of action for wrongful death, known as Lord Campbell's Act," to "counter this harsh rule," *Carter v. Wallace & Gale Asbestos Settlement Trust*, 439 Md. 333, 96 A.3d 147, 163 (2014), American legislatures, like their courts, soon followed Britain's lead by adopting statutes patterned after Lord Campbell's Act, including its requirement that the wrongful death action "be brought by the executor, administrator, or personal representative of the deceased person's estate." *Id.* at 165.

While legislation creating a cause of action for wrongful death abrogated the common law rule and fixed "the anomaly that a tortfeasor who would normally be liable for damages caused by his tortious conduct would not be liable in situations where the damages were so severe as to result in death," *Variety Children's Hosp. v. Perkins*, 445 So.2d 1010,

1012 (Fla. 1983), it left untouched another common law rule, that all person injury claims — whether related to, or separate from, the injury that caused his death — abated when someone died. *See* SPEISER & ROOKS, *Recovery for Wrongful Death* § 1:13 ("the wrongful death statute was a response to the failure of the common law to provide a remedy for wrongful death. Similarly, there was a corresponding failure in the common law to provide a remedy for personal injuries to a person who died either before bringing or before completing a personal injury action."). Accordingly, legislatures once more had to "modify what was considered the harsh and unjust rule of common law" and adopt statutes to declare which claims continued after a person's death. *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441, 442-43 (1975).

■ Although wrongful death claims and survival claims can be related, particularly when the injury is also the cause of death, they are not the same cause of action. "The prime difference between the theories underlying the two types of statutes . . . is that the survival statute merely continues in existence the injured person's claim after death as an asset of his estate, while the usual wrongful death statute creates a new cause of action." 1 SPEISER & ROOKS, *Sources of Wrongful Death* § 1:13. In other words,

> [a]lthough they arise out of a common factual background, the death action . . . is a separate and distinct cause of action from the cause of action for the decedent's injuries which survives his death . . . . The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence . . . . The other is not a new cause of action at all, but merely continues in his personal representative the right of action which accrued to the deceased at common law because of the tort.

*Piacquadio v. Beaver Valley Serv. Co.*, 355 Pa. 183, 49 A.2d 406, 407 (1946) (internal quotation marks and citation omitted); *accord Quiroz v. Seventh Ave. Ctr.*, 235 Cal. App. 2d 243, 45 Cal. Rptr. 222, 227 (2006) ("Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event."); *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993) ("Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right

101

arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses.") (citation omitted). It is for this reason that Mrs. Der Weer is simply incorrect in claiming that she would be "adding no new cause of action and no new party" by amending the complaint. (Pl.'s Mot. 2.).

 In arguing that the complaint inadequately pleaded a survival claim, Mrs. Der Weer fails to identify which tort claims the complaint pleaded on behalf of John Der Weer that she is now pursuing as a survival action. Instead, she focuses only on punitive damages, underscoring that everyone knew from the beginning that she was pursuing a survival action because the complaint included a demand for punitive damages. This argument fails because punitive damages are not a stand-alone claim. *See Anthony v. FirstBank V.I.*, 58 V.I. 224, 227 n.4 (V.I. 2012). *Accord Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) ("Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action."); *Kirk v. Denver Pub. Co.*, 818 P.2d 262, 265 (Colo. 1991) ("a claim for exemplary damages is not a separate and distinct cause of action, but rather is auxiliary to an underlying claim for actual damages.") (internal quotation marks and citation omitted). Rather, like any other type of damages — whether nominal, compensatory, liquidated, or exemplary — punitive damages are just one element of a cause of action. *See, e.g., Thomas v. Casford*, 1961 OK 158, 363 P.2d 856, 858 (1961) ("injury or damage is an element of a cause of action and is not of itself a cause of action."). Furthermore, even though section 77 of title 5 authorizes punitive damages, no court has addressed yet whether punitive damages are recoverable for every tort claim brought as a survival action, or whether the availability of punitive damages in a survival action depends on whether such damages would have been available if the person had lived and pursued a personal injury lawsuit. Thus, pleading punitive damages, without more, was not sufficient to state a survival claim.

 Additionally, the history of wrongful death and survival actions makes clear that when someone dies two things happen. First, any personal injury claims the person may have had abate unless there is authority extending the life of those claims. Second, if a person's death was caused by or resulted from someone else's actions or failure to act, then that person's survivors can only recover if authority creates a cause of action for wrongful death. And while wrongful death is a new claim —

102

with its own elements that must be alleged in a complaint and proven at trial[3] — a survival claim is not really a claim. It is merely a vehicle for pursuing someone else's claims. Because John Der Weer's injuries were personal to him, and not the same as the wrongful death claim his survivors have, his personal injury claims had to be plead in the complaint. *Cf.* 8A AM. JUR. PLEADING & PRACTICE FORMS *Death* § 6 (2004 ed.) (recommending that survival claims identify the "cause of action against the defendant for injuries, which the decedent would have been entitled to maintain had the decedent lived" and allege, *inter alia*, what damages were suffered "before decedent's death").

■ Here, nothing in the May 7, 2005 Complaint identifies any claim John Der Weer had that Lenore Der Weer is pursuing in a survival action as his personal representative. The closest the complaint comes is in alleging generally that the defendants "directly and proximately caused, and are legally responsible and liable for[,] *the harm* and wrongful death sustained by Decedent." *Id.* ¶ 40 (emphasis added). The harm John Der Weer suffered is certainly distinct from the harm his survivors suffered. But a general accusation of harm is insufficient to identify what tort claims — whether an intentional tort or negligence — John Der Weer had, which he could have pursued against the more than thirty defendants named in the complaint if he had lived, and that his personal representative is pursuing as a survival action. Although the complaint attempted to plead multiple tort claims — negligence, gross negligence, recklessness, intentionally wrongful acts as the first cause of action, supplying a chattel dangerous for intended use as the second cause of action, and punitive damages as the third cause of action — there really is only one cause of action here, wrongful death, with alternate theories of wrongful death liability. *Cf.* SPEISER, *Recovery for Wrongful Death* §§ 2:1-2-16 (discussing theories of liability in wrongful death actions). Because the complaint did not plead any claim for "damages for pain and suffering of John DerWeer . . . under 5 V.I.C. § 77," (Pl.'s Mot. 2), and instead addresses only the damages and injuries of the survivors and the

---

[3] The Court does not address here what those elements should be — a question no court in the Virgin Islands has yet addressed — because clearly the five theories alleged in the complaint should have sufficed to put the defendants on notice of what actions they allegedly took or failed to take that could warrant liability under section 76 of title 5 of the Virgin Islands Code for John Der Weer's wrongful death.

estate of John Der Weer, the Court reaffirms what it previously concluded, that Mrs. Der Weer "did not assert a survival claim here." (Mem. Op. 12, entered Feb. 24, 2014.)

## B. Although Mrs. Der Weer Impliedly Requests Leave to Amend, It Must Be Denied

Because the complaint did not plead a survival claim, however inadequately or inartfully, this leaves the question whether Mrs. Der Weer is, at least impliedly in her motion, requesting leave to amend the complaint to add a survival claim. The Court finds for two reasons that she has. First, in her reply Mrs. Der Weer argues that "the asserted survival action *would be timely* under the applicable statute of limitations" and, therefore, the amendments are not futile because "the present action was filed within the permissible statute of limitations for either a wrongful death or survival action." (Pl.'s Reply 4-5) (emphasis added). This argument only makes sense if Mrs. Der Weer is requesting, in the alternative, leave to add a survival claim because that claim "would be timely" now since the May 7, 2005 Complaint was timely when it was filed. The second reason for finding that Mrs. Der Weer impliedly requests leave to add a survival claim is the background to what prompted this motion to amend. Mrs. Der Weer explains in her motion that the reason she "seeks leave to amend at this time," (Pl.'s Mot. 2 n.1,), is because the Court concluded in its March 24, 2014 Memorandum Opinion that she "did not assert a survival claim." *Id.* at 1 (quotation marks omitted). But in fact the Court held in that Opinion that she "did not *file this action* as both a wrongful death action and a survival action." (Mem. Op. at 13) (emphasis added). So even though Mrs. Der Weer did not expressly request leave to add a survival claim, the Court finds from the overall background of the present motion, as well as the arguments raised for and against that motion, that Mrs. Der Weer is requesting, in the alternative, leave to add a claim under the survival statute.

In opposing this request, the Hess Defendants argue that amending the complaint to add a survival claim is futile because the Legislature eliminated recovery under both the wrongful death statute and the survival statute for death-related injuries. They further argue that even if Mrs. Der Weer can pursue both claims, amending the complaint would also be futile since the statute of limitations has expired. Because there would be no need to consider whether the statute of limitations has run if

the Hess Defendants are correct that survival claims and wrongful death claims are incompatible, the Court will turn to that question first.[4]

### i. Virgin Islands Wrongful Death and Survival Statutes

Like other jurisdictions, the Virgin Islands provides by statute the right to recover for wrongful death and also, by statute, declares what tort claims do not automatically abate at death. Both statutes — the wrongful death statute, section 76 of title 5, and the survival statute, section 77 of title 5 — were first enacted in 1921 and later revised in 1957 when the

---

[4] In their opposition, the Hess Defendants raise an important, but unrelated, point — one that Mrs. Der Weer did not address in her reply — that determining whether a personal representative can recover in a wrongful death action and in a survival action for death-related injuries may warrant a "new analysis" because no appellate court has addressed the Virgin Islands wrongful death and survival statutes and therefore "there is no binding precedent" on this issue. (Hess Defs.' Opp'n 8.) Citing *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014), the Hess Defendants further claim that a new analysis is necessary here not only because of the absence of binding precedent, but also because the way courts in the Virgin Islands approach the law has recently changed. *See id.* at 8-9 (citing *Connor*, 60 V.I. at 602-04). Although they acknowledge that "[i]t is not possible to resolve this issue through a [*Banks*] analysis," *id.* at 9 — "a three-part analysis" adopted in *Connor* in which courts "weigh all persuasive authority both within and outside the Virgin Islands, and determine the appropriate common law rule based on the unique characteristics and needs of the Virgin Islands," 60 V.I. at 603 (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981 (V.I. 2011)) (other citations omitted) — the Hess Defendants still suggest that the Court should follow *Connor*'s broader directive and adopt the general approach taken by the majority of courts around the country. This approach will show that "wrongful death statutes allow recovery only for injuries that result in death, while survival actions are for those claims that did not result in death." (Hess Defs.' Opp'n 9) (citing RESTATEMENT (SECOND) OF TORTS §§ 925-26 (1979)). Although the Court agrees that a "new analysis" is necessary to resolve whether Mrs. Der Weer can add a survival claim, it is not because of *Connor*'s directive to determine the soundest common law rule for the Virgin Islands. As explained above, statutes govern both wrongful death claims and survival claims and therefore there is no common law rule to apply. Rather, if *Connor* is at all instructive here, it is its criticism of "mechanistic and uncritical reliance" on persuasive precedent and its encouragement to "lower courts" to undertake an "independent" analysis, which in turn will help "improve the quality of appellate decisions." 60 V.I. at 602, 604 (internal quotation marks and citation omitted). An independent analysis is particularly important here because courts in the Virgin Islands have uncritically relied on the trial-level decisions of the District Court of the Virgin Islands regarding wrongful death and survival claims, decisions which the Hess Defendants concede are merely persuasive on the Superior Court (Hess Defs.' Opp'n 8) (citing *In re Q.G.*, 60 V.I. 654, 661 n.8 (V.I. 2014)). *Cf. Better Bldg Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 755 (V.I. 2014) ("decisions of the District Court sitting in its capacity as a local trial court are not binding on the Superior Court."); *see also Walters v. Walters*, 60 V.I. 768, 777 n.10 (V.I. 2014) (holding that predictions of the District Court of the Virgin Islands as to how the Supreme Court of the Virgin Islands might rule are not binding on the Superior Court of the Virgin Islands).

Legislature borrowed California's wrongful death and survival statutes. *See Williams v. Dowling*, 318 F.2d 642, 644, 4 V.I. 465 (3d Cir. 1963) (noting both as borrowed from California). Under the 1957 statute, a personal representative could pursue both a wrongful death action and a survival action even if the injury resulted in death. *See* V.I. CODE ANN., tit. 5, § 76 (1967 ed.) ("Any action brought by the personal representatives of the decedent pursuant to the provisions of section 77 of this title may be joined with an action arising out of the same wrongful act or neglect brought pursuant to the provisions of this section."), *amended by* Act No. 3556 (Apr. 29, 1974), 1974 V.I. Sess. L. 82.

But in 1974, the Legislature effectively repealed the 1957 wrongful death statute by borrowing Florida's Wrongful Death Act "word for word with few exceptions." *Leonard v. Gov't of the V.I.*, 17 V.I. 169, 171 (Terr. Ct. 1980). Among other changes not relevant here, the 1974 amendments to section 76 declared that "[w]hen a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." *See* V.I. CODE ANN. tit. 5, § 76(d) (1997 ed.), *amended by* Act No. 6413, § 3 (July 18, 2001), 2001 V.I. Sess. L. 38. A personal representative could still pursue a survival action for the estate, but only if the injury was not the cause of the person's death. If it was, then the tort claim abated under the 1974 amendments.

The first case to consider the 1974 amendments was *Mingolla v. Minnesota Mining and Manufacturing Company*, 893 F. Supp. 499 (D.V.I. 1995). There, the District Court of the Virgin Islands, sitting as a trial court, held that the 1974 amendments to the wrongful death statute were "intended to put an end to multiple lawsuits under the survival statute for death-resulting personal injuries" and "force all survivors and beneficiaries to pursue an action for personal injuries resulting in death" exclusively as a wrongful death action. *Id.* at 507. Relying on cases from Florida, including the decision of the Supreme Court of Florida in *Martin v. United Security Services, Inc.*, 314 So. 2d 765 (Fla. 1975), the District Court concluded that a personal representative could pursue "alternative, inconsistent causes of action — a cause of action under the survival statute (which assumes that plaintiffs injuries did not result in his death) and a cause of action under [the wrongful death statute] (for injuries resulting in the decedent's death)," but "may recover on only one cause of action." *Mingolla*, 893 F. Supp. at 507-08 n.11.

*Mingolla* correctly stated the law in the Virgin Islands after the 1974 amendments, that "survivors must prosecute their claims" in a wrongful death action "[w]hen the injury to the decedent results in his death." *Id.* at 507. As a result, the Legislature in 2001, presumably in response to *Mingolla*, amended section 76 once more. The 2001 amendments changed "no action" to "any action" in subsection (d) and "delet[ed] the phrase 'and any such action pending at the time of death shall abate.' " 2001 V.I. Sess. L. at 38. In place of the deleted language, the Legislature added the phrase " 'whether or not filed at the time of death, and shall not abate.' " *Id.* Currently, section 76(d) provides that "any action for the personal injury shall survive, whether or not filed at the time of death, and shall not abate" even if the "personal injury to the decedent results in his death." 5 V.I.C. § 76(d).

Despite the 2001 amendments, the District Court, again sitting as a trial court, reaffirmed *Mingolla* in 2004, holding that "relief can only be granted pursuant to either section 76 or section 77, but not both." *Fleming ex rel. Fleming v. Whirlpool Corp.*, 301 F. Supp. 2d 411, 413, 45 V.I. 439 (D.V.I. 2004). The court explained that "[n]othing in the Legislature's recent amendments to sections 76 and 77, made effective on July 18, 2001, changed this structural principle of the statutory scheme," *id.*, "[e]ven though [an] action for personal injuries now survives when the death results from the tort." *Id.* at 414. Instead, "because each section governs a different factual scenario," a personal representative recovers under section 76 if the "tortfeasor's wrong" caused someone's death, and if not, then under section 77. *Id.* at 413. The overall "statutory scheme" remained unchanged, the court reasoned, because the 2001 amendments did not "allow recovery for certain personal injury damages, e.g. non-economic damages like decedent's pain and suffering, and punitive or exemplary damages." *Id.* at 414.

Courts continue to follow *Mingolla* and *Fleming* without conducting an independent analysis to determine whether the "statutory scheme" for death-related personal injuries did change.[5] As a result — and as the

---

[5] *See, e.g., Sukow v. Clarke*, Civ. No. 2010-102, 2012 U.S. Dist. LEXIS 125609 (D.V.I. Sept. 5, 2012) (noting that section 76(d) "was intended to eliminate multiple suits arising out of the decedent's death by 'forcing all survivors to assert their claims in a single lawsuit' " (quoting *Mingolla*, 893 F. Supp. at 505)); *Lockhart-Mollah v. Gov't of the V.I.*, Civ. No. 2005-126, 2009 U.S. Dist. LEXIS 67541 (D.V.I. July 31, 2009) (citing *Mingolla* and explaining par-

parties' arguments make clear — confusion between wrongful death claims and survival claims persists. *Accord Crawford v. Daly*, 55 V.I. 66, 75-77 (Super. Ct. 2010) (discussing amendments and resulting confusion). For example, the Hess Defendants argue that Mrs. Der Weer "can recover only under the wrongful death provisions of § 76, and not under the survival of torts § 77" if the "tortfeasor's act caused [the] injury that leads to death." (Hess Defs.' Opp'n 6) (citing *Fleming*, 301 F. Supp. 2d at 413). Mrs. Der Weer counters that the 2001 amendments were "intended to permit both [a] survival action and [a] wrongful death action to be brought together." (Pl.'s Reply 4) (citing *Crawford*, 55 V.I. at 66 n.15.). Because the Court agrees that the 2001 amendments did change the "statutory scheme," the Court cannot uncritically rely on persuasive precedent, but must instead explain why.

The only logical conclusion that follows from the 1974 amendments is that the Legislature intended to repeal the 1957 wrongful death statute and eliminate death-related tort claims under the survival statute. This is essentially what *Mingolla* held and also what the Florida Supreme Court held in *Martin* concerning the statute the Virgin Islands borrowed "word for word with few exceptions." *Leonard*, 17 V.I. at 171. *Martin* involved a challenge to the constitutionality of Florida's Wrongful Death Act, specifically whether the 1972 act violated the one-subject rule in Florida's Constitution, which prohibits revising or amending laws by reference to the title of the legislation. *See* FLA. CONST., art. III, § 6. Because the 1972 act did not refer to Florida's survival statute or give notice that "damages resulting from the decedent's pain and suffering were being abolished," the appellants argued in *Martin* that it was unconstitutional. 314 So. 2d at

enthetically that "survivors must prosecute their claims in a wrongful death suit under 5 V.I.C. § 76" "where the actionable injury causes or results in the decedent's death"); *Hamilton v. Dowson Holding, Co., Inc.*, 51 V.I. 619, 623-29 (D.V.I. 2009) (applying *Mingolla* and *Fleming* to grant motion for summary judgment on survival claim because injury resulted in death and was therefore a "pure wrongful death" case), *reconsideration denied*, 51 V.I. 855; *Bertrand v. Cordiner Enters., Inc.*, 53 V.I. 280, 302-03 (Super. Ct. 2010) ("case law interpreting sections 76 and 77 makes it clear that plaintiffs must choose the appropriate remedy between the two provisions and may not recover under both.") (citations omitted); *but see Crawford v. Daly*, 55 V.I. 66, 78-79 (Super. Ct 2010) (rejecting *Mingolla-Fleming* approach) ("the plain meaning and intent of the amended statutes [5 V.I.C. § 76 and 5 V.I.C. § 77] yield a different conclusion than in *Mingolla* and *Fleming*). *Cf. Halliday v. Foot Locker Specialty, Inc.*, ST-07-CV-461, 2014 V.I. LEXIS 92 & n.7 (V.I. Super. Ct. Oct 20, 2014) (citing *Crawford* but declining to decide whether a plaintiff may pursue claims under both section 76 and section 77).

770. Although the Florida Supreme Court rejected the argument, they did acknowledge that it "appear[ed] to have merit" and further observed that the 1972 act "could have been more explicitly drawn to include a reference . . . to the survival action statute." *Id.* The court ultimately concluded, however, that "[t]he only logical construction" of the phrase "when a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate" was that death-related claims had been merged "into the new Wrongful Death Act." *Id.* The survival statute remained, but only "to preserve other actions which the decedent may have brought or was bringing prior to his death." *Id.* at 770 n.18.

█ Because the Virgin Islands Legislature borrowed Florida's wrongful death statute before *Martin* was decided, it represents only persuasive, not binding authority. *See V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 364 (V.I. 2014) ("When the Virgin Islands Legislature borrows a statute from another jurisdiction, the local enactment is, absent any evidence to the contrary, construed to mean what the highest court of that jurisdiction construed it to mean before the Legislature adopted it. However, decisions from the source jurisdiction made after the enactment of the statute in the Virgin Islands are not controlling, but persuasive only.") (internal quotation marks and citations omitted). But *Martin* is nonetheless instructive because it shows that although "[t]he intent of the 1972 Act was 'to merge the survival action for personal injuries and the wrongful death action into one lawsuit,' " *Capone v. Phillip Morris USA, Inc.*, 116 So. 3d 363, 375 (Fla. 2013) (quoting *Martin*, 314 So. 2d 765, 768 (Fla. 1975)), that intent was not apparent until the Florida Supreme Court decided *Martin* in 1975. *Martin* also shows that the Virgin Islands inherited the same uncertainty by borrowing Florida's Wrongful Death Act "word for word." *Leonard*, 17 V.I. at 171. And just as in *Martin*, the only logical conclusion that follows from the plain language of section 76, as amended in 1974, is that "no action for the personal injury . . . survive[d]" but instead "abate[d]" when the injury "result[s] in . . . death." V.I. CODE ANN. tit. 5, § 76(d) (1997 ed.).

█ In contrast, the only logical conclusion for the 2001 amendments is that the Legislature indented to overrule *Mingolla* and revive death-related tort claims under section 77 of title 5. *Cf.* 1A NORMAN J. SINGER & J.D. SHAMBIE SINGER, *Sutherland Statutes and Statutory Construction*

§ 22:26 (7th ed. 2009) ("A reviving act is one which restores legal existence and force to a statute that has been expressly or impliedly repealed. A repealed statute may be revived by express enactment or by implication."). In other words, the plain language of section 76(d), as amended in 2001, compels the conclusion that the Legislature intended to further amend the 1974 amendments and restore the right of a personal representative to pursue all tort claims, including death-related claims, in a survival action. *Accord Crawford*, 55 V.I. at 73-75. For this reason, the Hess Defendants' reliance on *Fleming* is misplaced because *Fleming* made the same mistake that other courts have made in the past, and that the parties make here, conflating wrongful death actions and survival actions. *Cf. Indalecio*, 2006 MP 18 at ¶ 8 ("Every jurisdiction providing recovery for wrongful death has been forced to grapple with these difficulties" concerning "the historical context in which wrongful death statutes arose and the often ambiguous language in which they were couched.").

 Because wrongful death actions and survival actions redress different wrongs, they benefit different parties. *Accord May Coal Co. v. Robinette*, 120 Ohio St. 110, 7 Ohio Law Abs. 173, 165 N.E. 576, 577-78 (1929) ("the death action is to be prosecuted by the administrator, for the exclusive benefit of the wife or husband and children, or, if there be neither of them, then of the parents and next of kin of the decedent. The [survivor] action . . . is for the benefit of the estate. . . . While the machinery of the action in the one case is the same as the machinery in the other, the death action is an action given expressly by the statute, and the rights which give rise to the two actions are entirely different.") (internal citation omitted); *Peterson ex rel. Peterson v. Burns*, 2001 SD 126, 635 N.W.2d 556, 562 (2001) (noting that wrongful death actions and survival actions are "separate and distinct causes of action and may have different plaintiffs, different remedies, different recipients of damages and different distributions of damage awards."). While both actions must be brought by a personal representative, *see* 5 V.I.C. §§ 37(a), 76(d), and 77, and while the same individual could, if granted the representative authority, assert both claims in the same action, the wrongful death action is not the same as the survival action. This is where *Fleming* erred.

 The 2001 amendments did not have to allow for "personal injury damages . . . like decedent's pain and suffering" under the wrongful death statute, *Fleming*, 301 F. Supp. 2d at 414, because damages for a

decedent's pain and suffering are recovered in a survival action, not in a wrongful death action. Before the 2001 amendments, section 77 limited damages to "loss of earnings and expenses," and excluded "damages for pain, suffering and disfigurement" as well as punitive damages and prospective profits. V.I. CODE ANN. tit. 5, § 77 (1997 ed.), *amended by* Act 6413, § 5, 2001 V.I. Sess. L. 38, 39. After the 2001 amendments, a personal representative can recover for pain, suffering, disfigurement, as well as punitive damages and prospective profits in a survival action because the Legislature, in addition to amending section 76, also amended section 77. When all of the changes made by the 2001 amendments are considered, the only logical conclusion is an intent to overrule *Mingolla* and correct the result caused by borrowing Florida's wrongful death statute.

 While the Hess Defendants are correct that "the wrongful death statute authorizes the personal representative to recover all damages caused by the injury that results in death," (Hess Defs.' Opp'n 8), what they fail to appreciate — and what *Fleming* overlooked — is that the personal representative recovers "all damages [to the survivors] caused by" the wrongful death. 5 V.I.C. § 76(d). Damages a deceased person may have suffered from a personal injury are recovered in a survival action and are completely separate from, and even unrelated to, the damages of his survivors for wrongful death. *Accord Day v. Allstate Indem. Co.*, 2011 WI 24, 332 Wis. 2d 571, 798 N.W.2d 199, 212-13 (2011) ("An action for wrongful death is separate and distinct from a survival action. It has been held many times that the wrongful-death statute creates a new cause of action, and such cause of action is distinct from any cause of action that the deceased might have had if he had survived. Importantly, wrongful death beneficiaries seek recovery not for the injury suffered by the deceased, but rather for the loss sustained to the beneficiaries because of the death.") (internal quotation marks, citations, ellipsis, and footnote omitted). *Cf. Variety Children's Hosp.*, 445 So. 2d at 1013-14 (Adkins, J., dissenting) (rejecting majority opinion — that a judgment or release by an injured person prior to his death bars a wrongful death claim by his survivors — because it conflates survival and wrongful death actions) ("Both the majority and concurring opinions base their decisions to some degree on the notion that the tortfeasor has already made his victim whole or has been held accountable in the earlier personal injury

suit. The opinions, however, have lost sight of the fact that the tortfeasor has caused distinct injuries to two separate parties.").

### ii. Although Mrs. Der Weer Could Have Pursued a Survival Action, the Complaint Cannot Be Amended Because the Statute of Limitations Has Run

 Because a personal representative can recover under both the wrongful statute and the survival statute, the final question is whether Mrs. Der Weer can amend the complaint to add a survival claim on behalf of the Estate of John Der Weer. Resolving that question concerns a related point neither party has raised, namely whether the personal representative who brings a survival action is the same party who brings a wrongful death action. Because wrongful death actions and survival actions benefit different persons, courts have held the representatives serve in different capacities. *See, e.g., St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead Cty., W. Div.*, 348 Ark. 197, 73 S.W.3d 584, 589 (2002) ("An action for wrongful death brought by a plaintiff in his capacity as an administrator . . . involves neither the same action, nor the same plaintiff as in a survival action brought by the same person in his individual capacity."); *Quiroz*, 45 Cal. Rptr. 3d 222 at 238-39 (2006) ("Th[e] survivor claim, which plaintiff pursued as the decedent's successor in interest, pleaded injury to the decedent, Gilbert Quiroz. In contrast, the earlier-filed wrongful death claim pleaded only injury to plaintiff, acting for herself, as the decedent's heir. As a matter of law, these distinct claims are technically asserted by different plaintiffs and they seek compensation for different injuries.").

 In a wrongful death action, the personal representative represents the interests of the survivors as well as the estate. *See* 5 V.I.C. § 76(d) ("The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages . . . caused by the injury resulting in death."). She must act "for the benefit of the decedent's survivors and estate," keeping in mind that "each survivor is entitled to an individualized damages award in addition to the amount awarded to the estate itself." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 602 (2012) (internal quotation marks and citations omitted). In a survival action, however, the personal representative acts only on behalf of the estate. *See* 5 V.I.C. § 77 (directing that any damages recovered in a survival action "shall form part of the estate of the

deceased."). Her authority is less constrained in a wrongful death action than in a survival action. *Cf. Island Tile & Marble*, 57 V.I. at 620 (noting that 5 V.I.C. § 76(e)(7) "explicitly authorizes any survivor to object to a settlement by the personal representative" in a wrongful death action). Thus, Lenore Der Weer as personal representative for the survivors and estate of John Der Weer in a wrongful death action is a not the same party as Lenore Der Weer, personal representative for the estate of John Der Weer in a survival action. This difference, while important, is not controlling here because the Family Division, in its September 7, 2004 Order, authorized Mrs. Der Weer to pursue both a wrongful death action and a survival action as personal representative. When she filed the May 7, 2005 Complaint, Mrs. Der Weer already possessed the representative authority to bring a survival action.

 This leaves the final question whether Mrs. Der Weer can amend the complaint to add a survival claim or whether, as the Hess Defendants argue, amending the complaint would be futile because the statute of limitations has run. Mrs. Der Weer correctly notes in her motion that the Court can look to the "doctrines developed under Federal Rule of Civil Procedure 15 . . . for matters not specifically addressed under SUPER. CT. R. 8." (Pl.'s Mot. 2-3) (citing *Santiago*, 57 V.I. at 256 n.11). One matter not specifically addressed under "Superior Court Rule 8 . . . [is] the legal standard that governs the relation back of amendments to pleadings." *Santiago*, 57 V.I. at 275. But the "doctrines developed under the federal rule," *id.* at 275 n.11,[6] extend only by analogy to amendments affecting plaintiffs. *See, e.g., Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301,

---

[6] Although both sides argue extensively as to whether Mrs. Der Weer's proposed amendment should relate back under Federal Rule of Civil Procedure 15, it is clear that "amendments in the Superior Court are governed by Superior Court Rule 8 to the exclusion of Rule 15." *Cacciamini & Rover Corp. v. Banco Popular de P.R.*, 61 V.I. 247, 255 n.5 (V.I. 2014). In other words, Superior Court Rule 8 governs whether a party moves to amend a pleading to correct an omission or defect, *see Brooks v. Gov't of the V.I.*, 58 V.I. 417, 427 n.11 (V.I. 2013) ("Superior Court Rule 8 . . . states the general rule that a court can correct errors or defects in pleadings"), or whether they move to "assert[ ] a claim . . . that arouse out of the conduct, transaction, or occurrence set out . . . in the original pleading." FED. R. CIV. P. 15(c)(1)(B). The Superior Court only looks to the "doctrines developed under the federal rule" for guidance in determining whether an amendment should relate back to the original, timely filed complaint. *Santiago*, 57 V.I. at 275 n.11. But Federal Rule of Civil Procedure 15 does not govern through Superior Court Rule 7 because that would "render the Superior Court rule wholly superfluous." *Chciuk-Davis v. People*, 57 V.I. 317, 325 (V.I. 2012) (internal quotation marks omitted) (citing *Corraspe v. People*, 53 V.I. 470, 482 (V.I. 2010).

1308, 224 U.S. App. D.C. 326 (D.C. Cir. 1982) ("Rule 15(c) deals expressly only with amendments changing defendants, but the Advisory Committee note to the 1966 amendment of the rule instructs the courts to extend 'by analogy' the 'attitude' taken in the rule to amendments changing plaintiffs.") (quoting 39 F.R.D. 69, 83-84 (1966)). Furthermore, federal courts are divided on whether Rule 15(c) applies when a plaintiff seeks leave to amend to add another plaintiff, rather than substitute one plaintiff for another.[7]

Here, however, the Court need not resolve whether a personal representative can amend a complaint to add a new claim in a different capacity. *Cf.* 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1501 (3d ed. 2010) ("Although an amendment that seeks to add a new plaintiff who asserts an entirely different claim will not relate back, several courts have held that an amendment by which plaintiff seeks to add a claim in another capacity can relate back."). So, even assuming that Mrs. Der Weer can amend the May 7, 2005 Complaint to add herself as personal representative in a survival action, the amendment would only relate back if the statute of limitations expired after the complaint was filed.

---

[7] *Compare, e.g., Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (extending prior precedent rejecting attempts to add defendants after expiration of statute of limitations to attempts to add plaintiffs after statute of limitations expired) ("an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (internal quotation marks and citation omitted)), *and Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 561 (3d Cir. 2008) ("Rule 15(c)(1) is simply not applicable here, as, by its own terms, it applies only to amendments to the 'party against whom a claim is asserted,' that is, the defendant." (quoting FED. R. CIV. P. 15(c)(1)(C)), *with Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995) (noting that "the relation-back rule requires plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights"); *Leachman*, 694 F.2d at 1309 (extending Rule 15(c) to the addition of new plaintiffs but only when "the defendant knew or should have known of the existence and involvement of the new plaintiff."), *and Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002) ("reject[ing] the proposition that relation back is available merely because a new plaintiff's claims arise from the same transaction or occurrence as the original plaintiff's claims" and instead requiring a sufficient identify of interests between new and original plaintiffs). *Cf. Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 964-70, 831 N.W.2d 696 (2013) (discussing split among federal courts and legal treatises regarding whether Rule 15(c) allows adding new parties or is limited solely to changing or substituting parties).

██ "[I]in order to benefit from Rule 15(c)'s relation back doctrine, the original complaint must have been timely filed. 'An amended complaint does not relate back to the filing of the original complaint if the original complaint, itself, was filed after the expiration of the statute of limitations.'" *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (quoting 51 AM. JUR. 2D *Limitation of Actions* § 263 (2000 ed.)). Since "[t]he 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case," *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005), Mrs. Der Weer's motion to amend the complaint to add a new claim by a new plaintiff — a survival claim prosecuted by the personal representative of the Estate of John Der Weer — would only implicate relation back concerns if the statute of limitations on John Der Weer's survival claim expired *after* she filed her original pleading, the May 7, 2005 Complaint. The Hess Defendants argue that Mrs. Der Weer's "claim for her husband's asbestos-related disease is now time-barred." (Hess Defs.' Opp'n 12.) Any claim her husband may have had for exposure to asbestos or other harmful substances had to have been filed within one year from the date of his death, or September 12, 2003. Since the Complaint was not filed until May 7, 2005, Mrs. Der Weer cannot amend now to add those claims.

Mrs. Der Weer claims in response that the Hess Defendants "misread" the statute governing the time to file a survival action, section 37(a) of title 5. She argues that section 37(a) does not "shorten[ ] the time a person may bring an action to 'one year from his death.'" (Pl.'s Reply 5 n.2) (quoting 5 V.I.C. § 37(a)). Instead, the statute extends the time for a "personal representative to bring a survival action '*after* the expiration of the time,'" but only if the survival claim "is brought within a year from death." *Id.* But this actually underscores why Mrs. Der Weer is incorrect, because the Complaint was not brought within a year from Mr. Der Weer's death.

██ ██ Because wrongful death actions and survival actions are different causes of action, "[d]ifferent statutes of limitation apply." *Piacquadio*, 49 A.2d at 407; *accord Groh v. Philadelphia Elec. Co.*, 441 Pa. 345, 271 A.2d 265, 269 (1970) ("We have discussed the problem of amendments of complaints involving Survival and Wrongful Death actions in two cases . . . . Those cases held that a plaintiff may not introduce a new cause of action by amendment of the complaint after the statute of limitations on that cause of action has run but that he may

115

amend by introducing an added claim of damage or by amplifying what has already been averred. We emphasized the fact that the rights conferred by the Wrongful Death Act and the Survival Act constitute separate and distinct causes of action."); *Miller v. Foster Wheeler Co.*, 98 Wn. App. 712, 993 P.2d 917, 920-21 (1999) ("Miller argues that a survival action is automatically timely if the wrongful death action is timely. This is not always true. While both claims may be merged into a single action, both types of action will stand only if each is timely asserted. It does not follow that because a cause of action based upon the death of the employee is timely, the action based on the personal injury is also timely and may be joined, regardless of the lapse of time between the injury and the filing of the action."). Section 37(a) of title 5 of the Virgin Islands Code provides that "[i]f a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his personal representatives, after the expiration of the time and within one year from his death." Section 77 in turn directs that personal injury, or tort, claims survive. *See* 5 V.I.C. § 77 ("A thing in action arising out of a wrong which results in personal injury to the person . . . shall not abate . . . by reason of the death of the person injured."). Read together, section 77 declares that personal injury claims do not abate when a person dies, but instead, pursuant to section 37(a), continue for a year after the person's death. This may lead to differences in how long a tort claim survives. Generally, a tort claim is subject to a two year statute of limitations. *See* 5 V.I.C. § 31(5)(A). The injured person has two years from the date of injury to file a lawsuit. If he dies before the two years has passed, section 37(a) gives his personal representative a year from the date of his death to pursue the claim. Depending on how long someone lives after being injured, the length of time to file a lawsuit may vary. For example, if a person dies two years to the exact day of her injury, section 37(a) would extend the time to pursue that claim as a survival action for an additional year, resulting in that claim being actionable for a total of three years after the date of injury. In contrast, if a person dies on the same day that he is injured, section 37(a) would shorten the length of time a personal representative has to pursue his claim in a survival action to "within one year from his death." While the discrepancy may seem unfair, it has to be seen in the light of the common law, which extinguished all tort claims upon death.

■ Here, the May 7, 2005 Complaint states that John Der Weer passed away from lung cancer on September 12, 2003. His personal injury claims — including but not necessarily limited to any claims concerning his exposure to asbestos — continued under section 37(a) for a year from his death, or until September 12, 2004. The parties have not claimed — nor is there any indication in the record — that Mr. Der Weer filed a lawsuit before his death or that a personal representative filed a survival action prior to this lawsuit being commenced on May 7, 2005. As a result, the May 7, 2005 Complaint is the original pleading here. But by May 7, 2005 John Der Weer's tort claims had already expired eight months earlier. For this reason, allowing Mrs. Der Weer to amend the complaint to add a survival claim would be futile.[8] *See St. Croix, Ltd.*, 60 V.I. at 478 n.4.

## III. CONCLUSION

For the reasons stated above, the Court finds that Mrs. Der Weer's motion to amend the complaint must be denied. Mrs. Der Weer did not plead a survival claim and therefore her motion does not seek to correct a defect or omission in the complaint. Instead, she seeks leave to amend to add a survival claim. Because John Der Weer's tort claims had already abated by the time the complaint was filed, Mrs. Der Weer cannot relate back to the original complaint to add a survival claim. Therefore, the motion to amend will be denied under a separate order of even date.

---

[8] Because the proposed amendment would be futile, the Court need not address the discovery rule — including whether to adopt it for the Virgin Islands, *cf. Anthony*, 58 V.I. at 230 n.8 — or when the statute of limitations for asbestos-related diseases begins to run. Even assuming that John Der Weer's "exposure . . . to any harmful substance necessarily occurred prior to his death," (Hess Defs.' Opp'n 10), a personal representative would have had to bring a survival action "within one year from his death." 5 V.I.C. § 37(a). By May 7, 2005, that year had already passed.