LENORE DER WEER as Personal Representative of the ESTATE OF JOHN DER WEER, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION; AMERADA HESS CORPORATION; LITWIN CORPORATION; RARITAN SUPPLY COMPANY, Individually and as Successor-in-Interest to BRIDGE SUPPLY COMPANY; MADSEN & HOWELL, INC.; UNION PUMP COMPANY; GARLOCK, INC.; FOSTER WHEELER CORPORATION, Individually and as Successor-in-Interest to FORTY-EIGHT INSULATIONS, INC.; 3M a/k/a MINNESOTA MINING & MANUFACTURING COMPANY; WESTINGHOUSE ELECTRIC CORPORATION; INGERSOLL RAND CORPORATION; ALLTITE GASKET COMPANY; UNIVERSAL OIL PRODUCTS also known as U.O.P.; CBI COMPANY, LTD., HARBISON-WALKER REFRACTORIES; FLUOR DANIEL, Individually and as Successor-in-Interest to FLUOR ENGINEERS & CONSTRUCTORS, INC.; FLUOR ENGINEERS & CONSTRUCTORS, INC.; FLUOR CORPORATION; A.P. GREEN INDUSTRIES, INC., Individually and as Successor-in-Interest to A.P. GREEN REFRACTORIES COMPANY; TUTHILL CORPORATION, Individually and as Successor-in-Interest to COPPUS MURRAY GROUP and/or COPPUS TURBINES; MOBIL OIL COMPANY; JOHN CRANE PACKING COMPANY also known as CRANE PACKING COMPANY; RUBBER & GASKET COMPANY OF PUERTO RICO, and SHELL OIL COMPANY, Defendants

LITWIN CORPORATION, Third-Party Plaintiff

v.

VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORPORATION; BIGELOW-LIPTAK; RESAL, INC.; PORTILLA CORPORATION; PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP, INC.; STUBBS-OVERBECK, INC.; RIGGERS & ERECTORS INTERNATIONAL, INC.; KELLOGG BROWN & ROOT, Individually and as Successor-in-Interest to BROWN & ROOT OVERSEAS, INC.; THE LUMMUS COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4, Third-Party Defendants

Case No. SX-05-CV-274

Superior Court of the Virgin Islands

Division of St. Croix

March 15, 2016

107

111

THOMAS ALKON, ESQ., Law Offices of Thomas Alkon, P.C., Christiansted, USVI, JERRY H. EVANS, ESQ., Richardson, Patrick, Westbrook & Brickman LLC, Mt. Pleasant, SC, *Attorneys for Plaintiff.*

RICHARD H. HUNTER, ESQ., Hunter & Cole, Christiansted, USVI, *Attorney for Defendant Universal Oil Product.*

SUNSHINE S. BENOIT, ESQ.,[1] Barnes & Benoit, LLP, Christiansted, USVI, WALTER G. LATIMER, ESQ., Wilson Elser Moskowitz Edelman & Dicker LLP, Miami, FL, *Attorneys for Defendant Hess Oil Virgin Islands Corporation.*

MOLLOY, *Judge*

## MEMORANDUM OPINION

(March 15, 2016)

**BEFORE THE COURT** are four motions, three of which are related to the first, a motion for summary judgment filed by Defendant Hess Oil Virgin Islands Corporation ("HOVIC"). HOVIC argues that this action for wrongful death is barred by a release John Der Weer ("John" or "Mr. Der Weer") signed four years before he died. By signing the release, Mr. Der Weer received a cash payment from HOVENSA, LLC — a joint venture formed in 1999 between HOVIC and Petróleos de Venezuela, S.A. Virgin Islands ("PDVSA VI") — and released HOVENSA and its affiliates from all claims he had against them. The Plaintiff, Lenore Der Weer ("Lenore" or "Mrs. Der Weer"), responded in opposition and argues that her husband's release does not apply to this action. But, in the alternative, even if the release does apply, it should be rejected as unconscionable. HOVIC filed a reply to Mrs. Der Weer's response.

Defendant Universal Oil Products ("UOP") also joined Mrs. Der Weer in opposing HOVIC's motion for summary judgment. However, because UOP filed its response a month late, HOVIC did not file a reply. Instead, HOVIC moved to strike the late response. This is the second motion before the Court. UOP filed a response in opposition to HOVIC's motion

---

[1] By order entered July 13, 2015, the Court granted a stipulation, filed July 1, 2015, allowing Barnes & Benoit, LLP to substitute as counsel for Hess Oil Virgin Islands Corporation and Hess Corporation in place of Bryant Barnes Blair & Benoit LLP, counsel of record when the motions addressed herein were filed.

to strike, arguing that striking papers from court records is a drastic remedy that is not warranted here. HOVIC did not file a reply to UOP's opposition to the motion to strike.

The third motion, filed by Mrs. Der Weer, requests permission to file a surreply in regards to the summary judgment motion. Mrs. Der Weer seeks leave to raise what she believes is a controlling issue: the six-year statute of limitations on contract actions. In opposing her motion, HOVIC argues that surreplies cannot be used to supplement a response with forgotten arguments, but only to address new arguments raised for the first time in reply papers. Since HOVIC did not raise a new argument in its reply, HOVIC argues that Mrs. Der Weer should not be allowed to add another argument by surreply. Mrs. Der Weer did not file a reply to HOVIC's opposition.

The last motion is a request HOVIC made to strike one of Mrs. Der Weer's arguments. After the Supreme Court of the Virgin Islands issued its decision in *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014), the Court granted the parties leave to supplement their arguments on any pending motion that involved the common law. Only HOVIC and Mrs. Der Weer responded. However, within its supplemental brief, HOVIC accused Mrs. Der Weer of exceeding this briefing mandate and then asked the Court to strike what according to HOVIC is a new argument. Mrs. Der Weer did not file a response.

For the reasons explained below, all four motions must be denied. Summary judgment is not proper here because a deceased person does not have a wrongful death claim to release during his lifetime. Instead, because a wrongful death claim only accrues on death and because it belongs to the survivors, only a survivor can release her or his own claim. Even if John Der Weer did intend to release HOVIC from all liability for any tort claims he may have had, judgment cannot be entered summarily in favor of HOVIC in this action because he could not release his survivors' right to recover for his wrongful death. For similar reasons, Mrs. Der Weer's motion for leave to file a surreply must be denied. The argument she seeks leave to raise by surresponse (not surreply) is not relevant, so giving her leave to respond further in opposition to summary judgment is unnecessary. Lastly, both motions to strike must also be denied. While courts have inherent authority to strike improper filings from their records, exercising that authority is not warranted here. UOP did file its response late and without permission, but striking its motion

paper would be improper as the Court can instead just disregard UOP's arguments. Similarly, striking one of Mrs. Der Weer's arguments is also unnecessary. Although called a request, HOVIC made a motion and the motion should have been filed separately and not embedded within a brief. Notwithstanding this technical error, HOVIC is simply incorrect in claiming that Mrs. Der Weer exceeded the briefing mandate.

## I. BACKGROUND

According to the record,[2] John Der Weer worked for HOVIC from 1971 to 1997 "until his employer changed to HOVENSA" in 1998. (Mem. Op. 3, entered Mar. 4, 2014 (citations omitted).) Mr. Der Weer continued working for HOVENSA until 1999 when he switched employers and worked for Jacobs Industrial Maintenance Company, LLC until 2000. *See id.* However, Mr. Der Weer continued to be paid by HOVENSA until 2000. Halfway through his second year at HOVENSA, Mr. Der Weer received a letter, dated July 31, 1999, from John M. Paulus, manager of refining maintenance stating that Mr. Der Weer's employment with HOVENSA would end on September 7, 1999 due to "the consolidation and reorganization of the [c]ompany's maintenance functions." (Pl.'s Opp'n to Def. HOVIC's S.J. Mot., Ex. 3, filed Dec. 2, 2013) (Letter from John M. Paulus to John Der Weer, July 31, 1999 (hereinafter "July 31, 1999 Letter").) Paulus explained that Mr. Der Weer may be offered employment with Jacobs Panamerican Corporation and then detailed the benefits HOVENSA would provide if he accepted the offer. Specifically, in exchange for taking a position with Jacobs, HOVENSA told Mr. Der Weer that he would receive

a cash supplement, on a prorated basis over twenty-four (24) months . . . in monthly installments . . . . At the end of this twenty-four (24) month period, or if you leave Jacobs' employment at the HOVENSA refinery before the end of this twenty-four (24) month period, these payments will be discontinued. . . . To receive these special incentives, you must, in exchange, execute a Release waiving all

[2] For background purposes, the Court draws from the entire record, including materials submitted by HOVIC in support of other summary judgment motions. *Accord Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 594 (V.I. 2015) (court must conduct "independent review of the entire record" in its summary judgment analysis).

claims against HOVENSA and its parents and its and their affiliate companies arising in connection with the termination of your employment or any matter which occurred prior to the termination of your employment.

(July 31, 1999 Letter 1.) If Mr. Der Weer declined the offer, or if Jacobs did not offer him a job, HOVENSA would continue paying his salary but only for thirty-four weeks, or just under eight months. Paulus's letter noted that other materials were enclosed. However, what those materials were is not clear from the record.

In a follow-up letter, dated August 30, 1999, Paulus explained that the releases that he previously had provided were "not valid" even though Mr. Der Weer had "already signed and returned one" to the company. (Pl's Opp'n to Def. HOVIC's S.J. Mot, Ex. 4 (letter, dated Aug. 30, 1999).) Paulus provided revised releases and informed Mr. Der Weer that he had "until October 14, 1999, to execute and return *one of the two* revised Releases to the Human Resources Department. One release for each of the two options" Mr. Der Weer was offered." *Id.* (parenthesis omitted). In closing, Paulus reiterated that the information covered in his July 31, 1999 Letter, and "a supplemental letter dated August 20th remain[ed] valid." *Id.*

A month later, on September 27, 1999, Mr. Der Weer signed a release, which in pertinent part, stated as follows:

This Release, dated August 30, 1999, is given by the Releasor, John Derweer [sic], referred to as "I," to HOVENSA, L.L.C., its parents and subsidiary and affiliated companies and their agents and employees, referred to as "You."

1. Release. I waive, release and give up any and all rights or claims which I may have against You. This releases all rights or claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to rights or claims resulting from anything which has happened up to now, but not any that may arise after I sign it. I specifically release the following rights or claims, as well as any other rights or claims I might have against You:

A. All rights or claims in connection with my employment and the termination of my employment, including rights or claims under federal and state fair employment practice or discrimination laws includ-

116

ing the Civil Rights Acts of 1866, 1870, 1964 and 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, the Equal Pay Act, and the U.S. Virgin Islands Wrongful Discharge Law, laws pertaining to breach of employment contract or wrongful termination, defamation, libel or slander, or any whistle blower or other laws relating to my employment with You and the termination of my employment.

B. This does not release You from any obligation for benefits due me as of the date of the termination of my employment under any of Your Employee Benefit Plans, such as, but not limited to, the Medical Benefit Plan, Long Term Disability Insurance Plan, Sickness and Injury Pay Plan, Employees' Savings Plan and Employees' Pension Plan or from any claims under the Workers' Compensation or Unemployment Compensation laws.

2. Payment. I will be paid a cash supplement up to a total of [amount redacted] in equal monthly installments, in full payment for making this Release. Since I have accepted employment with Jacobs, I am not entitled to severance payments under Your Severance Pay Plan. I understand payments will be made in twenty-four (24) monthly installments and will be discontinued if I leave Jacobs employment at your St. Croix refinery. This Release will still be valid even if the payments are discontinued as stated. Deductions required by law will be withheld from amounts paid to me.

3. Confidentiality. I will not disclose the nature, amount or fact that I have been offered, accept or receive the payment described in paragraph 2 above to anyone other than my spouse, attorney or accountant, and then only if they agree to keep this information confidential.

4. Future Matters. I will not bring or join any lawsuit or file any charge or claim against You in any court or before any government agency relating to my employment or the termination of my employment. I will not seek employment with You in the future. If I violate these agreements or the confidentiality provision of paragraph 3 above, You can recover what You have paid me.

5. Who is Bound. I am bound by this Release. Anyone who succeeds to my rights and responsibilities, such as my heirs or the executor of my estate, is also bound. This Release is made for Your benefit and all who succeed to Your rights and responsibilities, such as Your successors or assigns.

(HOVIC S.J. Mot., Ex. B (Release, dated Sept. 27, 1999).) The release bears two signatures. One presumably is John Der Weer's; the other is the signature of a witness.

Approximately four years later, on September 12, 2003, Mr. Der Weer passed away from lung cancer. He was sixty-four years old when he died. On August 16, 2004, his wife, Lenore, filed a petition with the Family Division of the Superior Court to be appointed personal representative of her husband's estate. The petition was granted by order entered September 7, 2004. On May 6, 2005, Mrs. Der Weer filed a complaint with the Civil Division for wrongful death, seeking (in her representative capacity) damages for herself, for John's children, and his estate. The May 6, 2005 complaint alleged that John's death resulted from exposure to asbestos while working at the oil refinery on St. Croix. Mrs. Der Weer named over thirty corporate defendants and alleged that each was liable directly or indirectly for John's death.

Approximately eight years after litigation commenced, HOVIC filed, on November 19, 2013, a motion for summary judgment, claiming that the release Mr. Der Weer signed in 1999 bars this wrongful death action. As proof, HOVIC submitted a redacted copy of the release and a copy of the first amended complaint.[3] Mrs. Der Weer also submitted a copy of the same release. But in addition she submitted copies of Paulus' letters and a June 24, 2003 cytopathology report showing John's cancer diagnosis. On December 12, 2013, HOVIC moved for an extension of time to file its reply to Mrs. Der Weer's response and asked to have until January 16, 2014. While HOVIC's request was under review, UOP filed a response and joined Mrs. Der Weer in opposing summary judgment. HOVIC filed its reply on January 16, 2014, but addressed only the arguments Mrs. Der Weer raised, not the arguments UOP raised.

Five days later, Mrs. Der Weer moved, on January 21, 2014, for leave to submit a surreply and attached her proposed surreply as an exhibit. Three days later, on January 23, 2014, HOVIC moved to strike UOP's response as untimely. On February 3, 2014, HOVIC responded in opposition to Mrs. Der Weer's surreply motion. On February 7, 2014,

---

[3] By order entered February 18, 2014, *nunc pro tunc* to November 7, 2005, the Court granted Mrs. Der Weer's motion to amend the complaint to substitute CBI Company, Ltd. in place of Chicago Bridge & Iron, N.V. as the real party in interest. This was the only amendment to the May 6, 2005 complaint.

UOP responded in opposition to HOVIC's motion to strike. By order entered February 18, 2014, the Court granted HOVIC's motion for an extension of time, which rendered its January 16, 2014 reply timely.

Just after the summary judgment motion — as well as the related motions for leave to file a surreply and to strike — were fully briefed, the Supreme Court of the Virgin Islands issued its decision in *Government of the Virgin Islands v. Connor*, which held that the Superior Court "must perform a three-part analysis as set forth in *Banks*"[4] when deciding what law applies in the absence of "prior precedent" from the Supreme Court. 60 V.I. 597, 602 (V.I. 2014). In light of *Connor*, the Court issued an order *sua sponte*, granting the parties leave to supplement any pending motion wherein "the Court must determine and apply the common law to resolve that motion on its merits." (Order 2, entered Feb. 26, 2014.) Mrs. Der Weer filed her supplemental brief on March 4, 2014; HOVIC filed its supplemental on March 6, 2014. However, within its brief, HOVIC also made a motion to strike an argument Mrs. Der Weer raised in her brief. Mrs. Der Weer did not respond to this motion. None of the other parties supplemented their motion papers in furtherance of the February 26, 2014 Order.

Subsequently, on November 10, 2015, the Court heard argument from the parties on all pending dispositive motions. Only counsel for Mrs. Der Weer, HOVIC, UOP, Raritan Supply Company, John Crane, Inc., and Madsen & Howell appeared. During the hearing, the Court tentatively scheduled jury selection and trial for June 20, 2016. The Court also inquired about the status of the claims against UOP because of a notice UOP had filed on March 21, 2014, informing "the Court and the parties that all claims involving UOP have been resolved." (Def. UOP's Notice 1, filed Mar. 21, 2014.) UOP had represented in its notice that resolution included "the Plaintiff's claims and all other claims whether designated as crossclaims or counterclaims" and further stated that "[f]ormal stipulations of dismissal" would "be filed in the near future." *Id.* Counsel for UOP noted some confusion over whether the stipulation for dismissal had been filed and, following the November 10, 2015 hearing, submitted the stipulation between UOP and the Plaintiff. By order entered March 14, 2016, the Court granted the stipulated dismissal. The claims Mrs. Der

---

[4] *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011).

Weer is pursuing remain pending now only against HOVIC and its parent company, Defendant Amerada Hess Corporation.

## II. DISCUSSION

### A. Related Motions

Before turning to HOVIC's motion for summary judgment, the Court must first resolve the related, or ancillary, motions that relate to summary judgment because granting or denying these motions would affect the arguments and issues that can be considered. Therefore, the Court must address Mrs. Der Weer's motion for leave to file a surreply and HOVIC's motions to strike before addressing HOVIC's motion for summary judgment. *Accord Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 191 (V.I. 2009) (reversible error to rule on motion to dismiss before ruling on motion to strike motion to dismiss).

### i. Plaintiff's Motion to File a Surreply

■ Generally the "parties are expected to succinctly address their arguments in three [filings] — a motion, a response and a reply — or less," if possible. *Nat. Conserv., Inc. v. Louisenhoj Holdings, LLC*, ST-13-CV-124, 2014 V.I. LEXIS 42, **14-15 (V.I. Super. Ct. July 8, 2014) (unpublished). *See also* LRCi 7.1(a) ("Only a motion, a response in opposition, and a reply may be served on counsel and filed with the Court") (applicable via SUPER. CT. R. 7). Courts do have the discretion, however, to allow further "response or reply" when necessary or warranted. LRCi 7.1(a).

Here, Mrs. Der Weer requests leave but not to address an argument HOVIC raised in its reply. Rather, Mrs. Der Weer wants to argue further against summary judgment by adding a new argument. Mrs. Der Weer claims that:

> [w]ithout explanation, [HOVIC] delayed for years bringing to the Court and counsel the [r]elease it relied upon. It delayed until after the completion of eight years of active fact-finding, years of full discovery (until closed) and depositions all over the United States (until closed), and the filing of expert reports (until closed — by the terms of this Court's Scheduling Order of February 5, 2013). This delaying maneuver foreclosed [Lenore] from fully "discovering" all the pertinent background facts underlying the execution of the "[r]elease" at issue.

(Pl.'s Mot. to Submit a Surreply 1-2, filed Jan. 21, 2014.) Because of the delay, Mrs. Der Weer's counsel "overlooked a legal issue not addressed" in her response in opposition to HOVIC's summary judgment motion. *Id.* at 2. She wants leave to raise this "potentially controlling" issue now by surreply. *Id.* at 2. And the issue she wants to raise concerns "the applicability of the provisions of 5 V.I.C. § 31(3)(A)," the statute of limitations on breach of contract claims. *Id.* at 1.

In opposing Mrs. Der Weer's motion, HOVIC notes that a surreply cannot be used to supplement a response with "overlooked" arguments. (HOVIC Opp'n to Pl's Mot for Surreply 2, filed Feb. 3, 2014.) Instead, a surreply is limited to addressing "new arguments raised" for the first time "in [the] reply briefing." *Id.* And since HOVIC already filed its reply, to allow Mrs. Der Weer to now add an argument would be prejudicial, HOVIC argues, because it would not have "the opportunity to respond" to her new argument. *Id.* But then HOVIC proceeded to respond to and reject the argument Mrs. Der Weer proposed, countering that the "statute of limitations argument is misplaced" because HOVIC has not sued for breach of contract. *Id.* at 3. Rather, "the terms of the [r]elease agreement" itself bar this action, HOVIC claims. *Id.*

Before turning to the merits, the Court notes first that what Mrs. Der Weer actually seeks leave to file is a *"further response."* LRCi 7.1(a) (emphasis added). A further response filed after the reply has been filed is called a surresponse, not a surreply, because it is the "second response by someone who opposes a motion" and generally "comes in answer to the movant's reply." BLACK'S LAW DICTIONARY 1674 (10th ed. 2014).[5] Since Mrs. Der Weer wants to amplify her earlier arguments, she seeks leave to file a surresponse. *Cf. In re Moorhead*, 62 V.I. 595, 601 n.6 (V.I. 2015) ("the substance, and not the caption . . . controls the legal standard"),

Ordinarily, when a party raises a new argument in its reply, the argument "is deemed waived because the opposing party typically does not have the opportunity to respond." *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 n.4 (V.I. 2013). However, the court, in its discretion, could grant the opposing party leave to respond further, either *sua sponte* when warranted or on motion. Here, if HOVIC had raised a new argument

---

[5] "Sur," comes from the French and means "[o]n; upon; over." BLACK'S LAW DICTIONARY 1610 (4th ed. 1957).

in its reply, then the Court could, in its discretion, allow Mrs. Der Weer to file a surresponse. But, as HOVIC points out — and as Mrs. Der Weer's own motion reveals — Mrs. Der Weer wants to "add additional argument" concerning " 'a legal issue' " her counsel " 'overlooked.' " (Def. HOVIC's Opp'n to Pl's Mot. 2 (quoting Pl's Mot. 2).) The issue was "not addressed" in HOVIC's summary judgment motion. (Pl's Mot. 2.) Therefore, Mrs. Der Weer clearly is not seeking leave to respond further to a new argument HOVIC raised in its reply. Instead, she wants to supplement her own arguments against summary judgment. While this too would be a surresponse (since it would be further response in opposition to a motion), the effect would be different.

■■ Since HOVIC did not raise a new argument in its reply, allowing Mrs. Der Weer to raise a new argument by surresponse would put HOVIC at a disadvantage because HOVIC would be unable to respond to the new argument without leave. When the non-moving party is allowed to raise a new argument by surresponse, then the moving party should also be given leave to reply further. *See* LRCi 7.1(a) ("further response or reply may be made only by leave of [c]ourt obtained before filing"). So, if the Court let Mrs. Der Weer file a surresponse, HOVIC should be allowed to file a surreply.[6] *See* BLACK'S LAW DICTIONARY 1673 (10th ed. 2014) (surreply refers to the "*movant's* second supplemental response to another party's opposition to a motion, usu. in answer to a surresponse" (emphasis added)). Generally surresponses and "[s]urreplies are disfavored because parties are expected to fully and expeditiously address all matters raised in the original motion in their response[s]." *Pate v. Gov't of the V.I.*, 62 V.I. 271, 292-93 (V.I. Super. Ct. 2015). But when further response or reply will aid the court by addressing relevant issues, including issues that might otherwise be waived if not timely raised, then leave should be granted. In this instance, however, the issue Mrs. Der Weer wants to raise will not aid the Court because it is irrelevant to resolving HOVIC's summary judgment motion.

---

[6] In this instance, because Mrs. Der Weer attached her proposed surresponse and because HOVIC proceeded to address Mrs. Der Weer's proposed argument within its response in opposition, any harm or prejudice would have been reduced, if not cured, had the Court granted Mrs. Der Weer's motion but without granting HOVIC leave to file a surreply. But, since the motion is being denied, the Court does not address whether it was appropriate for both parties to, in essence, brief the merits of an issue before the Court allowed it to be raised.

In her proposed surresponse, Mrs. Der Weer argues that her husband's release is essentially a contract and then explains "that actions sounding in contract must be brought within six (6) years after the accrual of a cause of action in contract." (Pl's Sur[resp.] to Def. HOVIC's S.J. Mot. 1, attached to Pl.'s Mot (hereinafter "Pl.'s Surresp.").) Because HOVIC "delayed more than six years after the alleged breach of the contractual release," HOVIC should not be allowed to now "invoke" the release and "deny John DerWeer [sic] the right to file this Complaint." *Id.* at 2. Instead, the Court should "invoke[] the provisions of Section 31(3)(A) to bar as untimely HOVIC's attempt to enforce the Contract of Release." *Id.* at 2. The flaw in this argument is that it conflates two different affirmative defenses: release and statute of limitations. And each is raised at a different stage of the litigation.

■ "The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend." *Dublin v. V.I. Tele. Corp.*, 15 V.I. 214, 232 (V.I. Terr. Ct. 1978) (citation omitted). Like other affirmative defenses, the statute of limitations must be "specifically pleaded at the first opportunity" or it will be deemed waived. *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536 (V.I. 2015). But unlike other affirmative defenses, which courts "refrain from" considering until trial or until a summary judgment motion "has been made to permit adequate discovery to establish the defense," *Joseph v. Bureau of Corr.*, 54 V.I. 644, 654 n.7 (V.I. 2011), the defense of statute of limitations is often apparent once the complaint is filed. For this reason, the statute of limitation is typically raised either by motion to dismiss for failure to state a claim or by motion for judgment on the pleadings. *See id.* ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal *for failure to state a claim*." (emphasis added) (citation and quotation marks omitted)). *But cf. United Corp. v. Hamed*, 64 V.I. 297, 306 (V.I. 2016) ("Because the statute of limitations is an affirmative defense involving issues of fact, it typically cannot be decided on the pleadings alone" (quotation marks and internal citation omitted)). But more to the point, the statute of limitation is a defense only to a claim. While HOVIC did assert counterclaims in its answer, it did not assert any counterclaim against Mrs. Der Weer. *See* SUPER. CT. R. 34 (referring to all cross-actions or other claims for relief as counterclaims). Instead, each of HOVIC's counterclaims were pled against other

defendants. So, Mrs. Der Weer's request to add an argument by surresponse — that HOVIC's attempt to enforce the 1999 release should be time-barred by the statute of limitations on contract actions — is simply misplaced.

Yet, even though this argument misses the mark, what Mrs. Der Weer is attempting to convey through her surresponse is not that the statute of limitations has run, but rather that HOVIC waited too long to raise John's release as an affirmative defense. (*See* Pl.'s Surresp. 2 ("[HOVIC] filed its Answer to the Complaint on July 17, 2005, including 45 affirmative defenses and did not raise the issue of breach of the contractual release. Critically . . . [by] waiting until November 2013, [HOVIC] delayed more than six years after the alleged breach of the contractual release to invoke its provisions to deny John DerWeer the right to file this Complaint.").) And to this broader concern "that HOVIC delayed for years" before moving for summary judgment based on the release, HOVIC responds that it "waited for the close of discovery" to move for summary judgment. (Def. HOVIC's Opp'n 2.) There is "no requirement," HOVIC counters, to "file any motion . . . by any deadline except for those dictated by this Court and the rules of procedure." *Id.* Because HOVIC "timely filed" its motion for summary judgment, and because Mrs. Der Weer "already timely responded," "additional briefing is not warranted" and Mrs. Der Weer's motion should be denied. *Id.*

HOVIC is correct. This is not an instance where, for example, if Mrs. Der Weer were not given a chance to respond further in opposition to summary judgment, she would have waived the right to claim that HOVIC waited too long to raise its affirmative defense and waived it. *Cf. Simpson v. Golden*, 56 V.I. 272, 281 n.6 (V.I. 2012) (" 'waiver of waiver' generally occurs where a litigant fails to raise a procedural default that would result in waiver of the opposing party's position, and therefore waives the right to assert the waiver."). Assuming, *arguendo*, that the Virgin Islands recognized the common law affirmative defense of release, HOVIC raised this defense timely. By order entered February 6, 2013, the Court set January 2, 2014 as the deadline for all dispositive motions. HOVIC's summary judgment motion, filed November 19, 2013, came before this deadline. Therefore, because HOVIC could wait until moving for summary judgment to raise its affirmative defenses, and because its motion for summary judgment was timely, Mrs. Der Weer's request to

add additional argument by surresponse — even if construed broadly as an objection to timing — must still be denied.

### ii. HOVIC's Motions to Strike

### a. Motion to Strike UOP's Untimely Response

After UOP filed its response and joined Mrs. Der Weer in opposing summary judgment, HOVIC moved to strike UOP's response as untimely.[7] Citing Local Rule of Civil Procedure 56.1(b), HOVIC argued that "any party adverse to a [summary judgment] motion must file their response within twenty days." (Def. HOVIC's Mot. to Strike UOP, LLC's Untimely Opp'n to its S.J. Mot. 1, filed Jan. 23, 2014.) Because UOP filed its response a month after HOVIC filed its motion, and without requesting an extension, HOVIC wants UOP's response stricken. "This Court should not reward UOP," HOVIC argues, "for blatantly and without explanation, disregarding this Court's rules by permitting it the opportunity to untimely file its Opposition." *Id.* HOVIC further requests, in the alternative, that if UOP's response is not stricken, then it should be given an opportunity "to brief any issues not addressed in its Reply."[8] *Id.* at 2.

In opposing the motion to strike, UOP points out that "HOVIC offers no legal authority for striking [its] Opposition." (Def. UOP's Opp'n to Def. HOVIC's Mot. to Strike 2, filed Feb. 7, 2014 ("UOP Opp'n").) UOP then counters that "[m]otions to strike are 'a drastic remedy to be resorted to only when required for the purpose of justice,' and are generally disfavored." *Id.* at 1 (quoting *Flanagan v. Windham, Int'l, Inc.*, Civ. No. 2002/237-M/R, 2003 U.S. Dist. LEXIS 24211, at *3 (D.V.I. Apr. 21, 2003) (unpublished)). The only reason HOVIC gave for striking UOP's response is that it was late. But HOVIC, too, filed its reply late, UOP

---

[7] Because the March 14, 2016 Order approved the stipulation between UOP and Mrs. Der Weer and dismissed the plaintiff's claims with prejudice, HOVIC's motion to strike UOP's response could be seen as moot. *See Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 98-99 (V.I. Super. Ct. 2014) ("A motion becomes moot when something occurs after a motion is filed that resolves the issues raised in that motion."). But in this case HOVIC's motion to strike is not moot because granting or denying the motion would still have a "practical impact in the case." *Id.* at 99. It would affect what filings remain part of the overall court record.

[8] Because the February 26, 2014 Order gave all parties leave to supplement their arguments, HOVIC already had leave to supplement its arguments with UOP's untimely opposition in mind. So, even if the Court excused UOP's untimeliness, HOVIC's request for leave to reply to UOP's response would still be denied.

argues. Further, citing *Citibank, N.A. v. Chammah*, 44 V.I. 85 (V.I. Terr. Ct. 2001), UOP asserts that Superior Court Rule 7 does not "mandate verbatim adoption of the practice and procedure under" the District Court's local rules of procedure. (UOP Opp'n 2.)

UOP is not correct in claiming that HOVIC too filed its reply late. HOVIC filed a motion for an extension of time to file its reply, which was granted by the February 18, 2014 Order. But UOP is correct that HOVIC did not cite any authority for striking UOP's response. But then, even the authorities UOP cited are not on point. *See id.* at 1-2 (citing *Flanagan*, 2003 U.S. Dist. LEXIS 24211; *Michael v. McIntosh*, Civ. No. 2007-100, 2007 U.S. Dist. LEXIS 78720 (D.V.I. Oct. 9, 2007) (unpublished); *Benjamin v. Esso Standard Oil Co.*, 1:08-cv-101, 2009 U.S. Dist. LEXIS 48677 (D.V.I. June 4, 2009) (unpublished)). *Flanagan, Michael,* and *Benjamin* all involved Federal Rule of Civil Procedure 12(f), which gives federal district courts the authority to strike "any redundant, immaterial, impertinent, or scandalous matter" from pleadings. FED. R. CIV. P. 12(f). *See Benjamin*, 2009 U.S. Dist. LEXIS 48677 at *2; *Michael*, 2007 U.S. Dist. LEXIS 78720 at **3-4; *Flanagan*, 2003 U.S. Dist. LEXIS 24211 at **3-4. UOP's response in opposition to HOVIC's motion for summary judgment is not a pleading. What's more, HOVIC did not move to strike UOP's response because it was impertinent or immaterial, but rather because it was late. So, even if Federal Rule of Civil Procedure 12(f) applied in the Superior Court through Superior Court Rule 7, *but cf. Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 581-584 (V.I. 2015), this rule would not govern HOVIC's motion to strike.

■ ■ But even though UOP's authority is distinguishable and even though HOVIC failed to cite any authority, the authority to strike is actually inherent in the authority of a court to control its docket, including what papers and other items become part of the record. *See, e.g., NRDC v. United States FDA*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012) ("a court has 'inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances.'" (quoting *In re Bear Stearns Cos., Inc., Securities, Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011)); *Bd. of Educ. v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982) (denying motion to strike "offending footnote" within opposing side's memorandum of law) ("Though this Court might well have inherent

supervisory power to cleanse the files of improper material, this is not an occasion to exercise such power"). As one legal treatise explained:

> A pleading or other paper on file, that is so defective in form, or so improper in substance, that it ought not to be placed on file, or a pleading or paper placed on file without right to file it, may, on motion, be stricken from the files; and the court may, *sua sponte*, order such pleading or paper stricken from the files. . . . The court has control of its files and its records, and the object of an order striking pleadings or papers from the files is simply to disencumber the files and the records of the court of papers that are in themselves improper and objectionable, or that are improperly placed on file.

George L. Phillips, *An Exposition of the Principles of Pleading Under the Codes of Civil Procedure* 260-61 (1896) (hereinafter "*Principles of Pleading*"). But it does not follow that courts should always strike untimely-filed papers just because they were filed late. A motion to strike raises "a question of propriety rather than of right" and for this reason it is "addressed to the discretion of the court." *Id.* at 261. *Accord Martinez*, 51 V.I. at 191.

 Rather than moving to strikē, HOVIC only needed to alert the Court to UOP's untimely response. As one court noted:

> It is sufficient for the party opposing the motion to register its objection to the movant's materials by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in consideration of the motion.

*Newsome v. Webster*, 843 F. Supp. 1460, 1465 (S.D. Ga. 1994) (denying motion to strike) (internal alterations, quotation marks, and citations omitted)); *see also Int'l Longshoremen's Ass'n, SS Clerks Local 1624 v. Va. Int'l Terminals*, 904 F. Supp. 500, 504 (E.D. Va. 1995) ("The filing of a motion to strike . . . is not a proper way to challenge the Employer Defendants' responsive filing."). Striking UOP's response in opposition — just because it was untimely — is not warranted here. Instead, the Court will disregard the arguments UOP raised in addressing HOVIC's summary judgment motion.

### b. Request to Strike Mrs. Der Weer's New Argument

The last related motion is a request HOVIC made in its supplemental brief to strike "additional inappropriate arguments" Mrs. Der Weer made

in her supplemental brief. (Def. HOVIC's Supp. Br. in Supp. of S.J. Mot. 2, filed Mar. 6, 2014.) Through the February 26, 2014 Order, the Court alerted the parties to the Supreme Court's decision in *Government of the Virgin Islands v. Connor*, and in particular to the obligation that the Superior Court "in the absence of binding precedent . . . perform a three-part analysis when determining the common law." (Feb. 26, 2014 Order 2.) Because a number of motions had been fully briefed and pending before *Connor* was decided and because the law on which those motions were based could be different after *Connor*, the February 26, 2014 Order gave the parties leave to supplement their respective positions. The Court did not identify any particular motion impacted by *Connor*, however. Instead, the Court directed in general that

> for any motion currently pending, where the Court must determine and apply the common law to resolve that motion on its merits, the parties shall have until Thursday, March 6, 2014 to serve and file any supplemental arguments and/or authority in light of *Connor* regarding what law the Court should adopt as the soundest rule for the Virgin Islands.

*Id.* Both Mrs. Der Weer and HOVIC filed supplemental briefs, but only as to the motion for summary judgment addressed herein.

In supplementing her position on whether her husband's release bars this wrongful death action, Mrs. Der Weer urged the Court to adopt the common law canons of construction for interpreting contracts. Applying these canons would "resolve the dispute regarding the correct interpretation" of the release and would reveal that "only fully completed claims (vested) were intended to be released," not "inchoate rights and claims." (Pl's Supp. Br. 2-4, filed Mar. 4, 2014.) Since "being exposed to asbestos dust alone without injury does not rise to the level of a legal claim," John's release simply does not apply here, Mrs. Der Weer maintained. *Id.* at 3. And therefore summary judgment should not be granted. In its supplemental brief, HOVIC first objected to Mrs. Der Weer's "additional argument . . . that only 'vested' claims are relinquished" and then accused her of "exceed[ing] the briefing mandate." (HOVIC Supp. Br. 1-2, filed Mar. 6, 2014.) HOVIC then requested that this "new argument" "be stricken." *Id.* at 2.

 Despite calling it a "request," HOVIC actually made a motion. Any "application" — whether orally or in writing — "made to a court or

judge for the purpose of obtaining a rul[ing] or order directing some act to be done in favor of the applicant in a pending case" is a motion. 60 C.J.S. *Motions and Orders* § 1 (2012). *See also* Phillips, *Principles of Pleading* 260 ("A motion is an application, oral or written, addressed to a court or a judge, by a party to an action or proceeding, or by one interested therein, asking the court or judge to make an order in such action or proceeding."). Written motions should be filed separately and not be embedded within other motion papers. Since the motion was improperly presented, it could be denied on that basis alone. *Accord Hammond v. Contino*, Civ. No. 14-1042, 2014 U.S. Dist. LEXIS 160686, at *6 n.4 (D.N.J. Nov. 17, 2014) (unpublished) ("Although the Court will consider Plaintiff's opposition brief, it will not consider Plaintiff's motion to disqualify counsel embedded within the brief, as this motion is not properly before the Court in an opposition to a motion to dismiss."); *see also In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 650 (S.D. W.Va. 2013) ("the plaintiff's alternative request to withdraw Ms. Jones's case from this trial pool is more properly the subject of its own, separate motion, not within a motion to reconsider my ruling on a motion to strike."); *Pine v. Bd. of Cty Comm'rs of Brevard Cty*, 6:06-cv-151, 2007 U.S. Dist. LEXIS 20753, at *6 (M.D. Fla. Mar. 23, 2007) (unpublished) ("Plaintiffs are advised that such request should be filed in a separate motion to strike and not embedded in the response to the Motion to Dismiss.").

██ ██ Notwithstanding this defect, HOVIC's motion lacks merit because all of the parties were given leave to raise new arguments in light of *Connor*. Although HOVIC is correct that Mrs. Der Weer did not expressly argue in her response (or in her proposed surresponse) that her husband's release covered only vested claims, she did argue emphatically throughout all of the motion papers she filed on this issue that "the 1999 release does not apply to the claims in this lawsuit." (Pl.'s Opp'n 2 (capitalization omitted).) Her supplemental argument regarding vested/unvested claims is not so different that it should be stricken as improper. Besides, by directing the parties to *Connor* and allowing supplemental briefing, the February 26, 2014 Order acknowledged the sea change *Connor* brought and granted all of the parties, including HOVIC, leave to revise their arguments accordingly. HOVIC is just mistaken in

accusing Mrs. Der Weer of exceeding this briefing mandate.[9] Accordingly, its request, construed as a motion, must be denied.

## B. HOVIC's Motion for Summary Judgment

### i. Arguments

Having resolved the ancillary motions, the Court turns now to the motion for summary judgment. In moving for summary judgment, HOVIC claims that by signing a release in 1999, John Der Weer "voluntarily and knowingly agreed in clear and unambiguous terms to release HOVENSA and any affiliated companies" from any claims he might have against them. (Def. HOVIC's S.J. Mot. 3, filed Nov. 19, 2013.) Since HOVIC and PDVSA VI are the members of HOVENSA, HOVIC argues that it can enforce the terms of Mr. Der Weer's release as an affiliate. And as Mr. Der Weer was already compensated for any claims he may have had, HOVIC contends that the Court should enter summary judgment in its favor because Mr. Der Weer's survivors and his estate are also bound by the release.

In opposition, Mrs. Der Weer offers three counterarguments, with three points under her first argument, which is that her husband's release clearly

---

[9] Mrs. Der Weer also supplemented another argument, discussed further below, concerning HOVIC's status to enforce the release as an affiliate of HOVENSA. This portion of her supplemental brief did exceed the scope of the February 26, 2014 Order. To explain, the parties were given leave after *Connor* to supplement their arguments and positions, if necessary, because *Connor* effectively transformed the common law of the Virgin Islands. After *Connor*, "the Restatements no longer hold an automatic preferred status in Virgin Islands law, but as in all other jurisdictions, merely represent persuasive authority, just like law review commentaries and decisions rendered by courts outside of the Virgin Islands." *Connor*, 60 V.I. at 602. But, before *Connor*, "blind reliance on the Restatements" by the bench and bar "may have been justified." *Id.* Because most, if not all, of the motions pending when *Connor* was decided assumed that the restatements represented binding authority, the Court, out of an abundance of caution, gave all of the parties leave to, essentially, revise their respective positions, particularly because blind reliance on the restatements could result, not only in a common law rule being abandoned, *see Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 386 (V.I. 2014), but also in claims being disallowed. *Cf. Matthew*, 56 V.I. at 685. Mrs. Der Weer responded by revising her argument to include vested and unvested claims. But she did not revise her earlier argument on HOVIC's affiliate status or even supplement the common law authority that she had relied on. Instead, she just bolstered her prior position with additional argument and without citation to legal authority. This portion of her supplemental brief exceeded the briefing mandate. If it were relevant to resolving the summary judgment motion, the Court would have to disregard it.

does not apply to this wrongful death action. Her first point under this argument is that her husband's release concerned only employment-related claims, not personal injury claims. If she were suing HOVIC for his wrongful termination, for example, that claim would be barred because it involves John's "employment [or] the termination of [his] employment." (Pl's Opp'n 3 (citation omitted).) Wrongful death is not related to how her husband's employment with HOVENSA ended. So, the 1999 release does not apply here. Her next point is that the release does not apply because it only covers claims John had before he signed it. Since John developed cancer and died in 2003, a release he signed in 1999 would not apply. Mrs. Der Weer's last point under her first argument is that John's release does not apply because she did not sue HOVIC as an affiliate of HOVENSA, but rather directly due to its own actions. For these reasons, the Court should find that the release does not apply and deny HOVIC's motion. Mrs. Der Weer offers a second and alternative argument if the release could be read to include personal injury claims. Viewed in the light most favorable to her as the non-moving party, then the Court should find that the release is ambiguous. She argues that since a release is just a contract and since ambiguities in contracts can be resolved through extrinsic evidence, then the Court can conclude, based on Paulus' letters, that HOVENSA was concerned about releasing employment-related claims, not tort claims. Mrs. Der Weer's third and final argument is that the release is unconscionable. That is, if the Court finds that the release applies and also that it is not ambiguous, then the Court should still reject it because John Der Weer "was not in a position to negotiate the terms." (Pl's Opp'n. 6.)

In its response, filed January 9, 2014, UOP contends that HOVIC's motion is "completely without merit" because "a cause of action for wrongful death did not accrue until the death of Mr. Der Weer on September 12, 2003 — four years after the HOVENSA Release was signed." (Def. UOP's Resp. to HOVIC S.J. Mot. 2, 5, filed Jan. 9, 2014.)[10] Like Mrs. Der Weer, UOP asserts that "the purpose of the releases drafted and tendered by HOVENSA was to protect HOVENSA,

[10] UOP's arguments are presented here only as background to the instant motion. As discussed above in denying HOVIC's motion to strike UOP's untimely response, the Court has disregarded the substance of UOP's arguments because the response was filed late and without requesting an extension of time or even offering any explanation for the delay.

and not from unasserted tort claims but from potential statutory employment liabilities," specifically the Virgin Islands Plant Closings Act. *Id.* at 4. John Der Weer gave up any employment-related claims he had in exchange for "a cash supplement." *Id.* at 5. But, "there is no indication whatsoever," UOP contends, "that the Release was intended to prohibit [Mr.] Der Weer from bringing any other legal claim, including tort-related claims." *Id.* And no "consideration" was mentioned in the release even if tort claims were included. *Id.* In sum, HOVIC should have raised the release long ago, UOP argues. And by now trying "to throw the football far down the field" just before trial, HOVIC's "Hail Mary Pass" "landed short of the end zone" and so summary judgment should be denied. *Id.* at 7.

■■ Refuting Mrs. Der Weer's arguments, HOVIC replies that the release covers employment-related claims as well as any other "rights or claims resulting from anything which has happened up to now." (HOVIC Reply to Pl.'s Opp'n to S.J. Mot. 4, filed Jan. 16, 2014 (citation omitted).) Since the complaint alleged that Mr. Der Weer was exposed to asbestos while working at the refinery, his injuries had to occur before 1999. As a result, this lawsuit for damages from workplace exposure to asbestos is barred by the release. HOVIC also rejects Mrs. Der Weer's suggestion that the Court could look outside the release. "The parol evidence rule prohibits the introduction of extrinsic evidence of a prior or contemporaneous agreement when the parties intend a written document to be the complete and final statement of their agreement." *Id.* at 5. But even if the Court did consider Mrs. Der Weer's evidence, it still "does not support [her] argument that the Release is limited to employment related claims." *Id.* at 5. Rather, the "July 31, 1999, [L]etter clearly states that the Release will apply to all claims against HOVENSA and its parents and its and their affiliated companies arising from any matter which occurred prior to the termination of [John Der Weer's] employment." *Id.* at 5-6 (citation, emphasis, and ellipsis omitted). Mr. Der Weer's exposure to asbestos occurred before he left HOVENSA. When he left HOVENSA, he released HOVENSA — and also HOVIC as an affiliate — from liability for any claims. Thus, according to HOVIC, the claims in this lawsuit are barred as a result. Finally, HOVIC also rejects Mrs. Der Weer's last argument that the release is unconscionable. Pointing to the letters she provided, HOVIC notes that they prove the opposite, that John Der Weer did have a choice. He "could have rejected the [r]elease and

opted to take severance pay and his pension without an early retirement penalty since he was over 60." *Id.* at 8.

As noted above, both parties filed supplemental briefs in response to the February 26, 2014 Order. In her brief, Mrs. Der Weer renewed her argument that a release is simply a contract and then asked the Court to adopt the common law canons of construction for contracts to resolve the "interpretation of [this] contract." (Pl.'s Supp. Auth. in Opp'n to HOVIC's S.J. Mot. 1, filed Mar. 4, 2014.) Applying these canons will show, she argues, that the release concerned only "fully completed claims (vested)," not "incomplete or unfinished claims" as HOVIC contends. *Id.* at 2. Citing *Purjet v. Hess Oil Virgin Islands Corporation*, 22 V.I. 147 (D.V.I. 1986), Mrs. Der Weer argues that "being exposed to asbestos dust alone without injury does not rise to the level of a legal claim." *Id.* at 3. (*Cf.* Pl.'s Opp'n 2-3.) John's claim did not accrue until "he first suffered 'injury' in 2003 when he first became ill and was diagnosed with lung cancer." (Pl's Supp. Br. 3.) He did not have a claim to release in 1999, so the document he signed then is not relevant here.

In its supplemental brief, HOVIC renewed its opposition to Mrs. Der Weer's request to look beyond the release and urged the Court to adopt the parol evidence rule as "the best rule for the Virgin Islands." (HOVIC Supp. Br. in Support of S.J. Mot. 6, filed Mar. 6, 2014.) Mr. Der Weer's alleged "exposure to asbestos occurred . . . at the refinery." *Id.* at 5. So, therefore, any "alleged injury from asbestos predated the [r]elease" and was "covered" by its "plain language." *Id.* And since Mr. Der Weer and HOVENSA intended their 1999 release "to be the complete and final statement of their agreement," the parol evidence rule, once adopted and applied here, would bar any evidence such as the letters Mrs. Der Weer submitted to show a different intent. *Id.*

In addition to their motions papers, the parties argued HOVIC's motion at the November 10, 2015 hearing. During oral argument, the Court observed that both parties shared the same assumption, namely that an individual can release his survivors' wrongful death claim. When questioned on this point, counsel for HOVIC stated she was unaware of any authority, binding or persuasive, that addressed the issue. Co-counsel added that this issue has "been a very hot topic" in Florida and then stated that courts have drawn a distinction between prospective and retrospective releases. (Hr'g Tr. 42:3, Nov. 10, 2015.) That prompted the Court to question whether there was any evidence in the record that John

133

Der Weer knew, before signing the release in 1999, that he had been exposed to asbestos. HOVIC argued in response that he must have known that he was exposed to asbestos because the complaint alleges exposure from as far back as 1966. But HOVIC also conceded that John Der Weer "might not have known that asbestos exposure allegedly caused his illness." (Hr'g Tr. 43:23-24.) Counsel then voiced broader concerns about the impact of a decision that allows double recovery for the same injury.

> I think if you settle with somebody and you give them money as compensation that you can release anything you are legally allowed to release. I don't think there is anything in the Wrongful Death Act specifically prohibiting HOVIC from releasing any and all claims forever by paying a significant sum at one time so that they don't have to worry about, you know, five or six lawsuits stemming from this one employee who worked there and subsequently left. . . . [W]hat's the point in entering into a release and giving the extra amount of money if you cannot get that guarantee that in the future you are going to be protected from lawsuits such as this? I mean, if you were to go down to a simple contract law issue, this was the party's intentions. The party's intentions were to release any and all claims and get a guarantee from the plaintiff that he, his heirs, executors and assigns would not file a lawsuit in the future.

(Hr'g Tr. 39:17-40:12, Nov. 10, 2015.) In response, counsel for Mrs. Der Weer clarified that at the time the parties were "addressing this motion [they] were still under the assumption" that the case involved "both a survival and a wrongful death claim." (Hr'g Tr. 53:2-4.) If this were a survival action, then Mr. Der Weer's tort claim would not have accrued until "his diagnosis with lung cancer" whereas in a wrongful death action the survivors' claims would not have accrued until "his death." (Hr'g Tr. 53:1-5.) In either case, both claims accrued after the release was signed, counsel argues, so HOVIC's motion for summary judgment should still be denied.

### ii. Analysis

Summary judgment is proper "only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citations and quotation marks omitted). Here, because

HOVIC moves for summary judgment, it has the initial burden to "identify those portions of the record that demonstrate the absence of a genuine issue of material fact." *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013). Once the moving party carries its burden, "the burden [then] shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in [her] favor." *Id.* (quotation marks omitted). But because summary judgment is a "drastic remedy," courts view all "inferences to be drawn from the underlying facts . . . in the light most favorable to the non-moving party" and take "the nonmoving party's conflicting allegations . . . as true if supported by proper proofs." *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 664 (V.I. 2011) (quoting *Williams*, 50 V.I. at 194-95) (internal quotation mark omitted).

 Additionally, because summary judgment is determined according to "the substantive law governing the cause of action," *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 (V.I. 2013), courts must first determine what claims are presented and then what law governs those claims. *See Machado v. Yacht Haven U.S.V.I., L.L.C.*, 61 V.I. 373, 380 (V.I. 2014) (adopting elements of negligence as substantive law before reviewing summary judgment decision); *see also Joseph*, 54 V.I. at 654 n.7 ("normally a trial court should endeavor to determine what claims are being presented before determining whether they have been barred by a release."). Since this is an action for wrongful death, the substantive law that applies is section 76 of title 5 of the Virgin Islands Code. As this Court previously held in denying Mrs. Der Weer leave to amend the complaint, "there really is only one cause of action here, wrongful death, with alternate theories of wrongful death liability." *Der Weer v. Hess Oil V.I. Corp.*, 61 V.I. 87, 103 (V.I. Super. Ct. 2014). This is a crucial point that both parties have failed to appreciate. John Der Weer did not have a claim for wrongful death in 1999. Therefore his release is not relevant. Two reasons support this conclusion.

 First, an action for wrongful death is brought by a personal representative on behalf of the survivors of someone who has died. Dead persons do not have wrongful death claims. Only survivors do. HOVIC is correct that courts have wrestled with this question. *Compare Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 760 (Fla. 2013) ("Florida cases have held that a general release executed by the decedent in resolution of a personal injury action bars any subsequent wrongful death action."); *Little v. Blue Goose Motor Coach Co.*, 244 Ill. App. 427, 431 (1927) ("the

statutory action is a right dependent upon the existence of a right in the decedent, immediately before his death, to have maintained an action for his wrongful injury, and it is upon this principle that it is generally held that a release or accord and satisfaction, or a prior recovery by deceased in his lifetime, constitutes a defense to the statutory action for the death"); *Haws v. Luethje*, 1972 OK 146, 503 P.2d 871, 875 (1972) ("There is no right in the personal representative to maintain an action unless the decedent had the right to sue at the time of his death. There being but one cause of action, there can be but one recovery. If decedent releases the cause of action, the statute does not confer upon his personal representative the right to sue"), *and Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992) ("a wrongful death action is not allowed if the decedent could not, immediately prior to his death, have maintained an action because of . . . release") (citing *Thompson v. Ft. Worth & Rio Grande Ry. Co.*, 97 Tex. 590, 80 S.W. 990 (1904)) (other citations omitted), *with Gershon v. Regency Diving Ctr., Inc.*, 368 N.J. Super. 237, 845 A.2d 720, 722 (2004) ("a release signed by decedent with the express purpose of barring his potential heirs from instituting a wrongful death action in the event of his death in connection with his underwater diving activities did not legally extinguish the potential heirs' rights to prosecute their statutorily authorized cause of action."); *Thompson v. Wing*, 70 Ohio St. 3d 176, 1994 Ohio 358, 637 N.E.2d 917, 922 (1994) ("the injured person cannot defeat the beneficiaries' right to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves."), *and Rowe v. Richards*, 35 S.D. 201, 151 N.W. 1001, 1006 (1915). Some background is necessary to understand the split of authority around the country.

In *Thompson v. Wing*, the Supreme Court of Ohio addressed the effect of a judgment in favor of the decedent on her survivors' right to bring a wrongful death action. Although a judgment is distinguishable from a release, the background the court provided is still helpful to address the broader concerns courts have raised.

> [W]hen a person is injured by the tortious conduct of another and the person later dies from the injury, two claims arise. The first is a claim for malpractice or personal injury, enforced either by the injured per-

son herself or by her representative in a survival action. The second is a wrongful death claim, enforced by the decedent's personal representative on behalf of the decedent's beneficiaries. A difficult issue arises when an injured person brings an action during his or her lifetime, recovers a judgment against the defendant, and later dies — allegedly from the same conduct that gave rise to the initial claim for personal injury or malpractice . . . . The issue concerns the effect the injured person's recovery has on his or her representative's ability to bring a subsequent wrongful death action. Two conflicting views have emerged on the issue . . . . [A] majority of jurisdictions hold that a recovery by the injured person in his or her own action extinguishes the subsequent wrongful death action. The rationale is that a wrongful death action is a derivative action, one derived from the claim held by the decedent immediately before his or her death. Under the majority view, the decedent's representative may bring the action only if the decedent immediately before his or her death could have brought suit, a view based on the "if death had not ensued" phrase in the wrongful death statute. The phrase, according to a majority of jurisdictions, means that a recovery by the injured person during his or her lifetime defeats a wrongful death action because the person, if he or she were still living, could not have brought suit. . . . A minority of jurisdictions, on the other hand, hold that a recovery by the injured person does not extinguish a subsequent wrongful death action because the action is an independent cause of action. Accordingly, the decedent's prosecution or settlement of his or her own claim during his or her lifetime can have no effect on the separate wrongful death claim that arises upon the decedent's death. Instead, a wrongful death claim may be brought so long as the defendant's conduct was such that a cause of action could have been brought against him or her at one time, not necessarily at the moment immediately before the decedent's death.

*Thompson*, 637 N.E.2d at 920 (paragraphs structure omitted); *see also Deggs v. Asbestos Corp. Ltd.*, 188 Wn. App. 495, 354 P.3d 1, 8 (2012) ("Some courts have held that no right of action remains for wrongful death beneficiaries if the decedent compromises his claim with the wrongdoer or executes a release for valuable consideration. Other courts have held that a release by a decedent during his life will not bar a later action for wrongful death. The minority of courts have reasoned that because the cause of action

for wrongful death does not arise until a decedent's death, it should be un-affected by acts of the injured person during his lifetime." (internal citation omitted)), *perm. app. granted*, 184 Wn.2d 1018, 361 P.3d 746 (2015). As *Thompson* shows, the outcome depends on whether courts view the survivor's wrongful death claim as derivative of or, instead, as independent from the decedent's personal injury claim. Under the derivative view, survivors cannot pursue a wrongful death action if the deceased person was compensated for his injuries during his lifetime. But under the independent view, the wrongful death "action cannot depend on the existence of a separate cause of action held by the injured person immediately before his or her death. To conclude otherwise would convert the wrongful death action from an independent cause of action to a derivative action, one dependent on a separate cause of action." *Id.* at 922.

 The Court finds the reasoning in *Thompson* more persuasive in large part because the derivative approach overlooks or perhaps ignores the fundamental difference between wrongful death statutes and survival statutes. "Survival statutes merely provide, where applicable, for the survival of decedent's cause of action. This may be bargained away by him. Such a proceeding is, of course, different from the action for wrongful death under most statutes which provide for a new cause of action to arise upon death in favor of designated statutory beneficiaries." 2 Stuart M. Speiser & James E. Rooks, Jr., *Recovery for Wrongful Death* § 15:14 (4th ed. 2005). Although survival statues and wrongful death statues were each intended to cure deficiencies in the common law, they also did not cure the same deficiency. "[W]rongful death is a new claim — with its own elements that must be alleged in a complaint and proven at trial — [whereas] a survival claim is not really a claim. It is merely a vehicle for pursuing someone else's claims." *Der Weer*, 61 V.I. at 102-03. Mr. Der Weer's tort claims are not part of this lawsuit. But his survivors' claims for wrongful death are. Even if he did release his own tort claims in 1999, he could not release his survivors' wrongful death claims. Thus, the Court finds that the release does not apply here.

 The second and more important reason why a decedent's release cannot bar his survivors' wrongful death claim is because the Virgin Islands wrongful death statute does not allow for it. Section 76 provides that "[a] defense that would bar or reduce a survivor's recovery if he were the plaintiff may be asserted against him, but shall not affect the recovery of any other survivor." 5 V.I.C. § 76(d). The term "defense" is

138

not defined in the statute and no court in the Virgin Islands has yet addressed what defenses are available in a wrongful death action. Generally, "[w]ords and phrases" not defined in a statute "shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. But, if an undefined word or phrase in a statute is "[t]echnical" or if it has "acquired a peculiar and appropriate meaning in the law," then that word or phrase must be "construed and understood according to [its] peculiar and appropriate meaning." *Id.*; *see also Murrell v. People*, 54 V.I. 338, 349 (V.I. 2010). The word "defense" is such a word that has acquired a peculiar meaning in the law. "Defense" is defined as a "defendant's stated reason why the plaintiff or prosecutor has no valid case; esp., a defendant's answer, denial, or plea." BLACK'S LAW DICTIONARY 509 (10th ed. 2014). Additionally, defenses that can either bar or reduce recovery are known as affirmative defenses because, "if true, [they] will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Id.* Therefore, the word "defense" in section 76, when understood in its technical sense, clearly refers to a defense, including an affirmative defense, that might "bar or reduce . . . recovery." 5 V.I.C. § 76(d).

██ Release is an affirmative defense. *See, e.g., Rivers v. Blom*, 163 Mo. 442, 63 S.W. 812, 814 (1901) ("release is an affirmative defense, and to be shown in evidence must be affirmatively pleaded, like payment or accord and satisfaction, or any other matter that contemplates that the claim once existed but has been discharged by the acts of the parties."); *see also* FED. R. CIV. P. 8(c)(1). And affirmative defenses derive largely from the common law. *See St. Thomas-St. John Bd. of Elec. v. Daniel*, 49 V.I. 322, 330 n.9 (V.I. 2007) ("affirmative defenses under FED. R. CIV. P. 8(c) derive from the common law plea by way of confession and avoidance" (internal quotation marks and citations omitted)). However, no court in the Virgin Islands has considered yet whether release — or any other common law affirmative defense — should be recognized under Virgin Islands common law. So, before deciding if Mr. Der Weer's release even applies here, the Court would have to first decide whether the soundest rule for the Virgin Islands is to recognize this defense under Virgin Islands common law.

██ Ordinarily, "when confronted with an issue of Virgin Islands common law" not settled by binding precedent, courts must " 'engage in

139

a three-factor analysis' " before applying a specific common law rule. *Machado*, 61 V.I. at 380 (quoting *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014) (citing *Connor*, 60 V.I. at 603))). And here the parties were given leave to supplement their arguments in light of *Connor*. Yet neither party questioned whether this affirmative defense should be recognized in the Virgin Islands. Instead, both parties just assumed that release is a defense. They only disagree as to whether the defense applies here. Despite their failure to raise this issue, this Court would still have to resolve it "because the parties cannot stipulate to the law," *Matthew v. Herman*, 56 V.I. 674, 682 (V.I. 2012), not explicitly by agreeing on the applicable law, *see Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012), or implicitly by not questioning what law applies. And while it is an important issue generally, the Court need not resolve it here because Virgin Islands courts must presume that the Legislature " 'know[s] the common law before' " enacting a statute. *Cascen v. People*, 60 V.I. 392, 403-04 (V.I. 2014) (quoting parenthetically *Gov't of the V.I. v. 19,623 Acres of Land*, 602 F.2d 1130, 1138, 16 V.I. 587 (3d Cir. 1979)). And courts must also presume that the Legislature " 'does not intend to change the common law, absent language so indicating.' " *Id.* at 404-05 (quoting *Tyson v. People*, 59 V.I. 391, 414 (V.I. 2013)). So, even if the Court were to conclude "that maintaining" release as an affirmative defense "is unquestionably the soundest rule for the Virgin Islands," *Machado*, 61 V.I. at 380, and further conclude that the Legislature preserved this common law defense for wrongful death actions, the only release that would be relevant here is a release that was signed by a survivor of John Der Weer, not by John Der Weer himself.

 The Legislature directed in unambiguous terms that the Virgin Islands wrongful death statute should "be liberally construed" because its intent is "to shift the losses resulting when wrongful death occurs *from the survivors* of the decedent to the wrongdoer." 5 V.I.C. § 76(a) (emphasis added). In general, statutes that are in derogation of the common law must be construed strictly. *See Hansen v. O'Reilly*, 62 V.I. 494, 520-21 (V.I. 2015) ("statutes . . . in derogation of the common law . . . must be strictly construed"). But wrongful death statutes are not

> strictly speaking, in derogation of the common law. Derogation is defined as the partial abrogation or repeal of a law, contract, treaty, legal right, etc. or as a lessening, weakening, curtailment impairment, de-

traction or taking away of a power or authority. Wrongful death acts do not take away any common law right; they were designed to mend the fabric of the common law, not to weaken it. Remedial acts are not strictly construed although they do change a rule of the common law.

*O'Grady v. Brown*, 654 S.W.2d 904, 908 (Mo. 1983) (en banc) (quotation marks, citations, ellipsis, and footnote omitted). *But cf. Whittlesey v. Seattle*, 94 Wash. 645, 163 P. 193, 193 (1917) ("Some courts have held the Wrongful Death Act, which, in some form, is common to all the states to be in derogation of the common law, and therefore to be construed strictly. Others have held the act to be remedial, and have construed it liberally" (citation omitted)). Therefore, if the Virgin Islands wrongful death statute is remedial and should to be construed liberally, and if its intent is to shift losses to wrongdoers from survivors, then it follows then that the only defenses available in a wrongful death action are defenses the statute provides.

██ Section 76(d) of title 5 of the Virgin Islands Code provides that "[a] defense that would bar or reduce *a survivor's recovery* if he were the plaintiff may be asserted *against him*" (emphasis added). Survivors are defined by statute to include "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." *Id.* § 76(b)(1). Survivors do not include the deceased person or his estate. Thus, the only defenses available are those that can be pleaded against a survivor, not against the deceased person.

 This is not a survival action. If it were, Mr. Der Weer's release would be relevant and the Court would have to consider its scope. But because this is a wrongful death action and because none of the survivors to this wrongful death action released their right to recover, the decedent's release is not relevant here. *Accord Carrillo v. Citimortgage, Inc.*, 63 V.I. 670, 678 (V.I. 2015) ("A general release is an instrument by which *one party* relinquishes all *its claims* against another for consideration" (emphasis added)). While the Court does appreciate the broader concerns HOVIC raised during oral argument, those concerns are not for courts to resolve. Parties can include wrongful death claims in their releases. The Legislature can amend the wrongful death statute. But for this case, even if the Court were to find that HOVIC, as an affiliate of HOVENSA, could enforce the terms of Mr. Der Weer's 1999 release, and further find that John Der Weer did intend to release all of his claims including his

personal injury claims — not just employment-related claims as Mrs. Der Weer argues — his release is still not relevant because it was not signed by Lenore Der Weer or by any other survivor. Unlike in other jurisdictions, the Virgin Islands wrongful death statute must be construed liberally. *See* 5 V.I.C. § 76(a). Release may be among the defenses available in a wrongful death action. *See id.* § 76(d). But only a release signed by a survivor. For this reason, HOVIC's summary judgment motion must be denied.

## III. CONCLUSION

██ A wrongful death claim does not belong to the person who later dies. Therefore, it is not a claim the decedent can release while still living. So judgment cannot be entered summarily in favor of HOVIC based on this affirmative defense. For this same reason, Mrs. Der Weer's request for leave to respond further and add a new argument must also be denied because the new argument she wants to raise by surresponse is not relevant and therefore additional briefing will not aid the Court. Lastly, both motions to strike must also be denied. Striking UOP's response from the record is not warranted just because it was late. Instead, the Court disregarded the arguments UOP raised. Similarly, striking an argument within Mrs. Der Weer's supplemental brief is also unnecessary. Although HOVIC's request was technically defective because it was asserted within a brief, not as a stand-alone motion, HOVIC incorrectly accused Mrs. Der Weer of exceeding the briefing mandate. All of the parties, including Mrs. Der Weer, were allowed to supplement their arguments after the law changed. Accordingly, all four motions must be denied. An appropriate order follows.